THOMAS M. BROWN (SBN 117449)
tbrown@brownwhitelaw.com
KENNETH P. WHITE (SBN 173993)
kwhite@brownwhitelaw.com
BROWN WHITE & OSBORN LLP
333 South Hope Street, 40th Floor
Los Angeles, California 90071-1406
Telephone: 213.613.0500
Facsimile:  213.613.0550

Attorneys for Plaintiff
Timothy Ryan

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TIMOTHY RYAN, M.D., an individual,<br><br>       Plaintiff,<br><br>v.<br><br>BRANT PUTNAM, M.D., an individual, JANINE VINTCH, M.D., an individual, ANISH MAHAJAN, M.D., an individual, CHRISTIAN DE VIRGILIO, M.D., an individual, HAL F. YEE, M.D., an individual, and DOES 1 through 50, inclusive,<br><br>       Defendants. | Case No.:  17-cv-05752<br><br>**COMPLAINT FOR RETALIATION BASED ON EXERCISE OF FIRST AMENDMENT RIGHTS – 42 U.S.C. § 1983**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff Timothy Ryan, an individual ("Plaintiff"), alleges as follows:

## STATEMENT OF THE CASE

1. Beginning in late 2013 and continuing through 2014, Plaintiff—a vascular surgeon at a public hospital—uncovered a fraudulent kickback scheme whereby at least one of Plaintiff's colleagues would perform risky and medically unnecessary surgical procedures in exchange for kickbacks from a national medical device manufacturer. Plaintiff reported the criminal kickback scheme to state and federal prosecutorial authorities. In response, the hospital's Medical Executive Committee ("MEC"), acting under color of state law, retaliated against Plaintiff and

initiated a frivolous disciplinary proceeding designed to punish and to silence him for blowing the whistle and reporting these activities. That retaliation violated Plaintiff's First Amendment rights.

## JURISDICTION AND VENUE

2. The claims alleged herein are asserted pursuant to the United States Constitution and 42 U.S.C. § 1983. This matter is within the Court's jurisdiction under 28 U.S.C. § 1331 and 1343.

3. The acts complained of occurred in this district and, therefore, venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff is, and at all times mentioned herein was, employed by the California Department of Health Care Services ("DHS") as a vascular surgeon at Los Angeles County Harbor-UCLA Medical Center ("Harbor-UCLA"). Harbor-UCLA is, and all times mentioned herein was, a California Department of Health Care Services "designated public hospital" and a Medicare and Medicaid certified hospital located in the County of Los Angeles. The County of Los Angeles owns and operates Harbor-UCLA and employs its staff of medical professionals, including Defendants. A vast majority of Harbor-UCLA's patients receive healthcare services through Medicare and/or Medi-Cal.

5. Defendant Brant Putnam, M.D. ("Dr. Putnam") is, and at all times mentioned herein was, employed by DHS and the Chair of the MEC and President of the Professional Staff Association at Harbor-UCLA. Dr. Putnam is, and at all times mentioned herein was, a resident of the State of California.

6. Defendant Janine Vintch, M.D. ("Dr. Vintch") is, and at all times mentioned herein was, employed by DHS and the Vice Chair of the MEC at Harbor-UCLA. Dr. Vintch is, and at all times mentioned herein was, a resident of the State of California.

7. Defendant Anish Mahajan, M.D. ("Dr. Mahajan") is, and at all times mentioned herein was, employed by DHS and a Member of the Medical Executive Committee MEC at Harbor-UCLA. Dr. Mahajan is, and at all times mentioned herein was, a resident of the State of California.

8. Defendant Christian DeVirgilio, M.D. ("Dr. DeVirgilio") is, and at all times mentioned herein was, employed by DHS and a Member of the MEC at Harbor-UCLA. Dr. DeVirgilio is, and at all times mentioned herein was, a resident of the State of California.

9. Defendant Hal F. Yee, M.D. ("Dr. Yee") is, and at all times mentioned herein was, employed by DHS as Los Angeles County's Chief Medical Officer. Dr. Yee is, and at all times mentioned herein was, a resident of the State of California.

10. Plaintiff does not know the true names of Does 1 through 20, inclusive, and thus sues said Defendants by fictitious names. Plaintiff will identify the true names and capacities of Does 1 through 20, inclusive, when they are ascertained. Plaintiff is informed, believes, and thereon alleges that each of the fictitiously named Defendants is a member of the MEC and responsible for initiating and pursuing frivolous disciplinary proceedings against Plaintiff to punish and silence him for reporting a fraudulent kickback scheme to state and federal prosecutorial authorities. Because the MEC has only provided redacted minutes and orders concealing the identities of the particular MEC members who approved the retaliatory actions against him, and because some MEC members may have been absent or abstained when the MEC took those actions, Plaintiff cannot yet identify those additional MEC members. Plaintiff will amend as soon as he identifies those MEC members through discovery.

11. Plaintiff does not know the true names and capacities of Does 21 through 50, inclusive, and thus sues said Defendants by fictitious names. Plaintiff will identify the true names and capacities of Does 21 through 50, inclusive, if and when they are ascertained. Plaintiff is informed, believes, and thereon alleges that each of the

1  fictitiously named Defendants is in some manner legally responsible for the
2  occurrences alleged herein.

3      12. Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, at all times herein mentioned, were the agents, employees, servants, and/or co-conspirators of the remaining Defendants. Plaintiff is further informed, believes, and thereon alleges that Defendants, and each of them, were the actual and/or ostensible agents of the remaining Defendants and were acting within the course and scope of said agency.

## GENERAL ALLEGATIONS

    13. Plaintiff is an accomplished general vascular surgeon. He graduated from Harvard Medical School, performed his residencies in vascular surgery at Stanford University and the Cleveland Clinic Foundation. He is board certified from the American Board of Surgery in Vascular Surgery. From 2013 to the present, Plaintiff served as a Staff Vascular Surgeon, Physician Specialist, at Harbor-UCLA.

    14. Rodney White, M.D. ("Dr. White") worked as the Chief of Vascular Surgery at Harbor-UCLA and served as Vice Chair of Harbor-UCLA's LA BioMed Research Committee. Dr. White had an agreement with a certain manufacturer of aortic stent grafts. Under the agreement, the manufacturer would pay Dr. White to put on "courses" during which the manufacturer's employees could observe stent graft procedures. In fact, the payments for "courses" were a sham, an effort to disguise unlawful kickbacks to Dr. White for his use of the manufacturer's stent grafts.

    15. These kickbacks gave Dr. White a financial incentive to seek out opportunities to perform stent graft procedures without regard to whether the patients actually needed them, i.e., whether they were medically necessary. Dr. White yielded to this incentive by reviewing Harbor-UCLA medical files to find candidates for stent graft procedures and then ordering procedures for them so he could make more money. For instance, in December 2013, none of Dr. White's patients needed a stent graft. Nonetheless, because Dr. White would be paid a fee for each "course" and a

per-patient proctoring fee, in addition to the professional fee he billed to the health insurance provider, Dr. White called one of Plaintiff's patients (Patient BH) and coerced her to agree to have a stent graft procedure the following week, even though the procedure was not medically necessary.

16. Specifically, Patient BH, who presented to Harbor-UCLA in December 2013, suffered from an acute type B aortic dissection. She was managed appropriately by Plaintiff with beta-blockers and antihypertensives. When she was symptom free and without malperfusion, she was discharged home.

17. Nonetheless, Dr. White and his nurse Rowena Buwalda called and instructed Patient BH to report to the emergency room at Harbor-UCLA under false pretenses. Specifically, Dr. White and his subordinates instructed Patient BH to report to the emergency room and claim to have "chest pains" even though the patient was not experiencing chest pains. Dr. White instructed Patient BH to claim that she was experiencing chest pains so that she could be admitted to Harbor-UCLA even though she had private insurance which would have made her ineligible absent prior insurance approval.

18. Dr. White requested that Plaintiff participate in the above-described "course" where a procedure would be performed on Patient BH. Plaintiff refused to do so because he believed it would have required him to engage in unlawful and unethical activity, and would have required him to conspire to perform a medically unnecessary surgery.

19. Patient BH came to Harbor-UCLA's emergency room as instructed, falsely complaining of chest pain. Patient BH sat in the emergency room for eight hours, and then was sent to the regular hospital floor without any antihypertensive IV medication. This is not how a patient with dissection pain would typically be managed. After being talked into signing a consent form, Patient BH had a medically unnecessary stent graft on the following Monday at Dr. White's direction.

20. During the procedure Patient BH had a serious complication (a retrograde dissection and stroke) resulting in complete expressive aphasia.

21. Plaintiff is informed and believes based on review of medical records, and on that basis alleges, that the above conduct was part of a larger scheme to promote implantation of stents from the manufacturer paying kickbacks to Dr. White, often at the expense of patient safety. This scheme included payment of kickbacks to other Harbor-UCLA doctors each time they used a particular medical device in treating a patient.

22. In or about April through June 2014, Plaintiff discovered additional instances of misconduct by Dr. White involving unethical or illegal acts which affected patient safety. This misconduct included falsifying patient case records in order to appear eligible to participate in clinical trials sponsored by the National Institute of Health ("NIH") and false certification of medical need regarding patients Dr. White had not examined, including patients Plaintiff examined and for whom Plaintiff formulated a medical plan.

23. Plaintiff reported the above-described conduct, as well as more general concerns that Dr. White and others at Harbor-UCLA were compromising patient care in order to perform courses for third party medical device manufacturers, and utilizing specific medical devices in which Dr. White and others had a pecuniary interest. Specifically, Plaintiff first reported these issues to Timothy Van Natta, M.D., Chief Medical Officer at Harbor-UCLA ("Dr. Van Natta"), Bruce Stabile, M.D., then Chief of Surgery ("Dr. Stabile"), Defendant Dr. DeVirgilio, then a senior Vascular Surgeon, and Delvecchio Finley, then CEO of Harbor-UCLA ("Finley").

24. Around the same time, Plaintiff also reported his concerns to an NIH compliance officer and informed Dr. Van Natta and Dr. DeVirgilio that he had reported the issues to NIH.

25. By January 2015, Plaintiff had lost confidence that hospital management would stop the fraud scheme and patient endangerment. As a result, on or about

January 12, 2015, Plaintiff contacted Deputy District Attorney Jennifer Lenz Snyder ("DDA Snyder"), head of the Los Angeles County District Attorney's Healthcare Fraud Division and informed her of the ongoing fraud scheme. DDA Snyder informed Plaintiff on April 9, 2015 that the Los Angeles County District Attorney's Office had transferred the investigation to the California Department of Justice ("DOJ"). Plaintiff thereafter informed Dr. Putnam, Dr. Van Natta, and Dr. DeVirgillo that he had reported Dr. White's conduct to law enforcement and that a criminal investigation was underway. Plaintiff is informed and believes, and on that basis alleges, that Dr. White and Defendants learned of Plaintiff's disclosures to NIH and law enforcement through discussions among hospital personnel.

26. In or about March 2015, after conducting a site audit, an NIH Research Integrity Officer informed Plaintiff via email that several members of the Harbor-UCLA team misrepresented their procedural volume histories to appear eligible to participate in clinical trials sponsored by NIH. NIH's finding confirmed Plaintiff's allegations of improper conduct among Harbor-UCLA's medical staff.

27. On May 21, 2015, Deputy Attorney General Sue Melton Bartholomew informed Plaintiff that the DOJ had opened a criminal investigation.

28. On August 25, 2015, Dr. White sent a letter to Defendant Dr. Putnam requesting that corrective action be taken against Plaintiff. In his letter, Dr. White claimed that Plaintiff's collection of information evidencing Dr. White's fraudulent and unlawful conduct (which Plaintiff had disclosed to NIH) violated the Health Insurance Portability and Accountability Act ("HIPAA") and California's Confidentiality of Medical Information Act ("CMIA"). Dr. White claimed in his letter that Plaintiff's collection and disclosure of this information "adversely affected [his] personal and professional life."

29. Thereafter, and as a direct result of Plaintiff's reporting of Dr. White's unlawful conduct to law enforcement, Harbor-UCLA's MEC ("MEC") initiated an internal disciplinary procedure which sought to revoke Plaintiff's Professional Staff

membership and privileges at Harbor-UCLA. Per Harbor-UCLA's Bylaws, the MEC is responsible for, among things, initiating disciplinary actions against medical staff at Harbor-UCLA and, where appropriate, dismissing medical staff and discontinuing medical privileges.

30. As part of this process, the MEC met with Dr. Yee, Los Angeles County's Chief Medical Officer, discussed with Dr. Yee Plaintiff's disclosure of unlawful conduct to NIH and law enforcement, and asked Dr. Yee and DHS to ratify the MEC's proposed retaliatory employment action. In or about April 2016, Dr. Yee approved the MEC's adverse employment action against Plaintiff knowing that such action was being taken to retaliate against Plaintiff for reporting Dr. White's unlawful and fraudulent conduct to NIH and law enforcement.

31. On October 5, 2016, Defendant Dr. Putnam informed Plaintiff via letter that the MEC had voted to revoke Plaintiff's Professional Staff membership and privileges at Harbor-UCLA in accordance with Article VI of Harbor-UCLA's Bylaws. The stated reason for the MEC's proposed action was Plaintiff's alleged "unprofessional behavior" which purportedly created a "chaotic situation in the vascular division."

32. The MEC's allegations against Plaintiff are false. The alleged "unprofessional behavior" cited by the MEC was a pretext for taking retaliatory action against Plaintiff for reporting unlawful and fraudulent conduct by Harbor-UCLA's Chief of Vascular Surgery Dr. White, to NIH and law enforcement. Plaintiff thereafter requested a hearing in accordance with Section 7.4-2 of Harbor-UCLA's Bylaws.

33. Plaintiff received on or about November 10, 2016 a "Notice of Charges" from Defendant Dr. Putnam. The Notice of Charges informed Plaintiff that a hearing would be conducted on the proposed action of the MEC to revoke Plaintiff's Professional Staff membership and privileges at Harbor-UCLA. Like the October 5, 2016 letter, the "Notice of Charges" falsely stated that the MEC sought to take this

action because of "unprofessional and uncooperative conduct and interactions with other Medical Staff members and support staff."

34. The November 10, 2016 Notice of Charges also cited as a reason for the MEC's proposed action Plaintiff's "[o]penly threatening to call external agencies to conduct investigations." In reality, the MEC members knew that Plaintiff had already reported Dr. White's conduct to NIH and law enforcement. Plaintiff had conveyed that information to both Dr. Putnam, Dr. Van Natta, and Dr. DeVirgilio.

35. On or about April 4, 2017, Defendant Dr. Mahajan hand-delivered a letter to Plaintiff indicating the County of Los Angeles' intention to suspend Plaintiff's privileges at Harbor-UCLA for 25 days. The letter, signed by Defendant Dr. Mahajan, cited multiple unfounded HIPAA and CMIA violations for Plaintiff's reporting of Dr. White's conduct to the NIH and law enforcement as the reason for the proposed suspension.

## CLAIM FOR RELIEF

## Retaliation Based on Exercise of Right to Free Speech
## in Violation of 42 U.S.C. § 1983
## (Against All Defendants)

36. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

37. Plaintiff is a citizen of the United States and each Defendant is a "person" within the meaning of 42 U.S.C. § 1983.

38. Defendants, at all times mentioned herein, were acting under the color of state law in their capacity as DHS employees and members of Harbor-UCLA's MEC. Defendants' acts or omissions were conducted within the scope of their official duties or employment.

39. Plaintiff exercised his constitutional right to free speech and to petition the government by reporting Dr. White's fraudulent and unlawful conduct to NIH and the Los Angeles County District Attorney's Office. As a direct result of his exercise

of this constitutionally-protected right, Defendants retaliated against Plaintiff through adverse employment actions. Absent Plaintiff engaging in the protected speech set forth above, Defendants would not have taken these adverse employment actions against him.

40. At all times mentioned herein, Plaintiff's speech activities related to matters of public concern and were not taken pursuant to any official job duties. Plaintiff's speech activities were relevant to the public's evaluation of the performance of public officials, and relevant to citizen decisions about the operation of government. Specifically, Plaintiff's reporting of the conduct of Dr. White and others demonstrated a kickback scheme and fraudulent misuse of taxpayer dollars to pay for medically unnecessary treatments which jeopardized the safety of patients at a County owned and operated hospital.

41. Defendants, and each of them, retaliated against Plaintiff for exercising his right to free speech in voting to revoke Plaintiff's Professional Staff membership and privileges at Harbor-UCLA. By taking adverse employment actions against Plaintiff substantially motivated by protected speech, Defendants violated Plaintiff's right under the First Amendment to the United States Constitution to freedom of speech. Defendants' adverse employment actions would chill and deter reasonable employees from speaking or associating.

42. As a direct result of Defendants' acts and omissions, Plaintiff suffered economic damages and noneconomic damages that Plaintiff would not have incurred but for Defendants' adverse employment actions. As a direct result of Defendants' acts and omissions, Plaintiff also incurred attorneys' fees and expenses, and had to spend time and resources responding to, defending himself against, and otherwise handling Defendants' retaliatory adverse employment actions.

43. Further, Defendants Dr. Putnam and Dr. Virgilio acted with malice and conscious disregard for Plaintiff's rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Timothy Ryan, M.D. prays for judgment against Defendants for:

1. Compensatory damages, economic and non-economic damages in excess of the minimal jurisdiction of this Court, in an amount according to proof;

2. General damages to compensate Plaintiffs for the mental and emotional injuries, physical injuries, distress, anxiety, and humiliation;

3. Attorneys' fees in an amount according to proof pursuant to 42 U.S.C. § 1988;

4. For costs of suit herein;

5. For prejudgment interest pursuant to California Civil Code section 3287, subdivision (a);

6. As to Defendants Dr. Putnam and Dr. DeVirgilio, punitive damages in an amount appropriate to punish them and make an example of them to the community; and

7. For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury.

DATED: August 3, 2017     BROWN WHITE & OSBORN LLP

By _s/Kenneth P. White_
THOMAS M. BROWN
KENNETH P. WHITE
Attorneys for Plaintiff
TIMOTHY RYAN, M.D.

4815-1466-1452, v. 1