(SPACE BELOW FOR FILING STAMP ONLY)

1  LINDA MILLER SAVITT, SBN 94164
   lsavitt@brgslaw.com
2  JOHN J. MANIER, SBN 145701
   jmanier@brgslaw.com
3  BALLARD ROSENBERG GOLPER & SAVITT, LLP
   15760 Ventura Boulevard, Eighteenth Floor
4  Encino, California 91436
   T: (818) 508-3700 | F: (818) 506-4827
5
   Attorneys for Defendants BRANT PUTNAM,
6  M.D., JANINE VINTCH, M.D., ANISH
   MAHAJAN, M.D., CHRISTIAN DE VIRGILIO,
7  M.D., HAL F. YEE, M.D., ROGER LEWIS, M.D.,
   and MITCHELL KATZ, M.D.
8

9              **UNITED STATES DISTRICT COURT**

10    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

12  TIMOTHY RYAN, M.D., an            Case No. 2:17-cv-05752-R-RAO
    individual,
13                                    *[Honorable Manuel L. Real]*
                  Plaintiff,
14                                    **MEMORANDUM OF POINTS AND
         vs.                          AUTHORITIES IN SUPPORT OF
15                                    DEFENDANTS' MOTION TO DISMISS
    BRANT PUTNAM, M.D., an            PLAINTIFF'S FIRST AMENDED
16  individual, JANINE VINTCH, M.D., an   COMPLAINT**
    individual, ANISH MAHAJAN, M.D.,
17  an individual, CHRISTIAN DE       Date:        December 4, 2017
    VIRGILIO, M.D., an individual, HAL Time:        10:00 a.m.
18  F. YEE, M.D., an individual, ROGER Ctrm:        880
    LEWIS, M.D., an individual,
19  MITCHELL KATZ, M.D., an           Action Filed: August 3, 2017
    individual, and DOES 1 through 50, Trial Date:   None Set
20  inclusive,
21              Defendants.
22
23
24
25
26
27
28

486626.1                            1

*BALLARD ROSENBERG GOLPER & SAVITT, LLP*
*15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR*
*ENCINO, CALIFORNIA 91436*

# TABLE OF CONTENTS

PAGE

I.  INTRODUCTION .................................................................................6

II.  ALLEGATIONS IN PLAINTIFF'S FAC ...............................................7

    A.  The Parties ..............................................................................7

    B.  Plaintiff's Allegations Against Dr. White .................................8

    C.  Plaintiff's Alleged Disclosures...............................................8

    D.  The MEC's Investigation and Recommended Discipline.................9

    E.  The County's 25-Day Suspension of Plaintiff's Employment.........12

III.  ALL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FROM
    SUIT. ...........................................................................................14

    A.  None of the Defendants – Least of All Dr. Yee, Dr. Katz, or
    Dr. Mahajan – Subjected Plaintiff to an Adverse
    Employment Action in Retaliation for Exercising First
    Amendment Rights. ................................................................16

    B.  The Contours of the Rights Against First Amendment
    Retaliation Alleged by Plaintiff Were Not, and Are Not,
    "Clearly Established" Within the Particular Factual Context
    of This Case............................................................................20

        1.  There Is No "Clearly Established Law" Under Which
        Defendants' Conduct Constituted an Adverse
        Employment Action. ......................................................22

        2.  It Would Not Have Been Readily Apparent to a
        Reasonable Public Official that Plaintiff Spoke as a
        Public Employee on Matters of Public Concern....................23

IV.  THE FAC FAILS TO STATE A CLAIM FOR VIOLATION OF § 1983.................26

V.  CONCLUSION .................................................................................26

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**PAGE(s)**

**Federal Cases**

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ..............................................................20, 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................15, 25, 26

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................15, 16, 25, 26

*Brandon v. Maricopa County*,
   849 F.3d 837 (9th Cir. 2017) ............................................24, 25

*Burlington N. & Santa Fe Ry. v. White*,
   548 U.S. 53 (2006) ................................................17, 18, 19, 22

*City of San Diego v. Roe*,
   543 U.S. 77 (2004) ....................................................................23

*Coszalter v. City of Salem*,
   320 F.3d 968 (9th Cir. 2003) ....................17, 18, 19, 22, 26

*Dahlia v. Rodriguez*,
   735 F.3d 1060 (9th Cir. 2013) (*en banc*)..........................16, 23, 24, 25

*Davis v. HSBC Bank*,
   691 F.3d 1152 (9th Cir. 2012) ..............................................16

*Demers v. Austin*,
   746 F.3d 402 (9th Cir. 2014) ........................................21, 25

*Dible v. City of Chandler*,
   515 F.3d 918 (9th Cir. 2008) ....................15, 16, 21, 23, 25

*Dominque v. Telb*,
   831 F.2d 673 (6th Cir. 1987) ................................................15

*Dunn v. Castro*,
   621 F.3d 1196 (9th Cir. 2010) ..............................................20

*(left margin, rotated)* BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

*Eng v. Cooley,*
   552 F.3d 1062 (9th Cir. 2009) ...................................................... 17, 19, 21, 25, 26

*Garcetti v. Ceballos,*
   547 U.S. 410 (2006) ............................................................................................. 24

*Hafer v. Melo,*
   502 U.S. 21 (1991) ................................................................................................ 14

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ...................................................................................... 14, 20

*Hope v. Pelzer,*
   536 U.S. 730 (2002) ............................................................................................. 20

*Johnson v. Poway Unified Sch. Dist.,*
   658 F.3d 954 (9th Cir. 2011) ............................................................................. 24

*Kennedy v. Bremerton Sch. Dist.,*
   869 F.3d 813 (9th Cir. 2017) ............................................................................. 24

*Leveto v. Lapina,*
   258 F.3d 156 (3d Cir. 2001) .............................................................................. 15

*Malley v. Briggs,*
   475 U.S. 335 (1986) ............................................................................................. 20

*Moore v. Kayport Package Express,*
   885 F.2d 531 (9th Cir. 1989) ....................................................................... 25, 26

*New York Times Co. v. Sullivan,*
   376 U.S. 254 (1964) ............................................................................................. 18

*Pearson v. Callahan,*
   555 U.S. 223 (2009) ...................................................................... 14, 15, 16, 25

*Pickering v. Board of Educ.,*
   391 U.S. 563 (1968) ............................................................................................. 16

*Robinson v. Solano County,*
   278 F.3d 1007 (9th Cir. 2002) *(en banc)* ................................................... 14, 25

*Sharp v. County of Orange*,
    No. 15-56146, 871 F.3d 901, 2017 U.S. App. Lexis 18148
    (Sept. 19, 2017) ..................................................................... 20, 21, 23

*Wasek v. Arrow Energy Servs.*,
    682 F.3d 463 (6th Cir. 2012) .............................................................. 22

*White v. Pauly*,
    137 S. Ct. 548 (2017) (*per curiam*) ............................... 14, 20, 21, 23

**State Cases**

*Skelly v. State Personnel Bd.*,
    15 Cal. 3d 194, 124 Cal. Rptr. 14 (1975) ........................................ 12

**Federal Statutes**

Health Insurance Portability and Accountability Act of 1996,
    42 U.S.C. §§ 1320d *et seq*. .......................................................... 9, 13

42 U.S.C. § 1983 .............................................................. 6, 14, 17, 19, 26

**State Statutes**

California Confidentiality of Medical Information Act,
    Cal. Civ. Code §§ 56 *et seq*. ............................................................... 9

Cal. Evid. Code § 1157 ............................................................................ 12

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) .............................................................................. 15

L.A. County Code § 2.76.540 ................................................................... 7

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

# I.   INTRODUCTION

The First Amended Complaint ("FAC") (Doc. 14) names **seven** Defendants, all employees of the County of Los Angeles ("County"). Defendants Brant Putnam, M.D., Janine Vintch, M.D., Christian De Virgilio, M.D., and Roger Lewis, M.D. are members of the Professional Staff Association ("PSA") at Harbor-UCLA Medical Center ("Harbor-UCLA" or the "Hospital") and the PSA's Medical Executive Committee ("MEC"). Defendant Anish Mahajan, M.D. is a non-voting MEC member. Defendants Hal F. Yee, M.D. and Mitchell Katz, M.D. are the Chief Medical Officer ("CMO") and Director, respectively, of the County's Department of Health Services ("DHS"), but are not MEC or PSA members. In fact, the PSA is a self-governing body and beyond the scope of Dr. Yee and Dr. Katz.

Plaintiff Timothy Ryan, M.D., claims his First Amendment rights were violated when ***the MEC voted, after an investigation, to recommend*** that Plaintiff's PSA membership and privileges be revoked due to Plaintiff's unprofessional conduct, which included: (1) violations of federal and state medical privacy laws; and (2) abusive behavior towards his co-workers. Plaintiff alleges the MEC's recommendation was in retaliation for his disclosures of ostensible misconduct by one of his former physician colleagues. However, Plaintiff admittedly appealed that recommendation, as he had the right to do under the PSA Bylaws, and he tacitly admits ***no final decision*** has been rendered on his PSA membership or privileges.

Plaintiff's claim under 42 U.S.C. § 1983 should be dismissed with prejudice, because the FAC's allegations show that: (1) all Defendants are entitled to qualified immunity; and (2) Plaintiff fails to state a claim for relief. No Defendant subjected Plaintiff to an adverse employment action, especially not as a matter of "clearly established" law within the particular factual context of this case. Only four Defendants were voting members of the MEC, which merely recommended action based on the results of a required investigation. Nor does "clearly established" law indicate that Plaintiff spoke as a private citizen on matters of public concern.

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

## II.   ALLEGATIONS IN PLAINTIFF'S FAC

### A.   The Parties

The County owns and operates Harbor-UCLA and employs a staff of medical professionals. (FAC ¶ 5.) The Hospital's self-governing PSA (*see* FAC ¶ 6) functions in accordance with Bylaws (Req. for Jud. Notice ("RJN"), Exh. 1) and acts in a purely advisory capacity to the Hospital's administrator and the County's Director of Health Services in connection with medical staff appointments, among other matters. (RJN, Exh. 2 [L.A. County Code § 2.76.540(A), (B), (D)].)

Since 2013, Plaintiff has worked at Harbor-UCLA as a Staff Vascular Surgeon, Physician Specialist. (FAC ¶ 1.) Plaintiff is employed by the DHS (FAC ¶ 5), as are each of the Defendants:

• Dr. Putnam is President of the PSA and Chair of the MEC. (FAC ¶¶ 2, 6; RJN, Exh. 1 § 11.2-2.)

• Dr. Vintch is the Vice Chair of the MEC. (FAC ¶ 7.)

• Dr. Mahajan is the CMO of Harbor-UCLA and an *ex officio* (***non-voting***) member of the MEC. (FAC ¶ 8; RJN, Exh. 1 § 11.2-1.2.)

• Dr. De Virgilio is a member of the MEC. (FAC ¶ 9.)

• Dr. Yee is the CMO of the County (specifically, DHS), and is ***not*** a member of the MEC. (FAC ¶ 10.)

• Dr. Lewis is a member of the MEC and is Chief of Emergency Medicine at Harbor-UCLA. (FAC ¶ 11.)

• Dr. Katz is the Director of DHS and ***not*** a member of the MEC. (FAC ¶ 12.)

Notably, Dr. Lewis and Dr. Katz were not named as Defendants in Plaintiff's original Complaint, nor were they mentioned anywhere in that pleading. (See Doc. 1, Complaint ¶¶ 5-9.)

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

**B.      Plaintiff's Allegations Against Dr. White**

Rodney White, M.D. was Harbor-UCLA's Chief of Vascular Surgery and Vice Chair of its LA BioMed Research Committee. (FAC ¶ 16.) Plaintiff alleges that Dr. White had an agreement with a manufacturer of aortic stent grafts, under which the manufacturer paid Dr. White to "put on 'courses' during which the manufacturer's employees could observe stent graft procedures." (*Id.*) According to Plaintiff, these payments "were a sham, an effort to disguise unlawful kickbacks to Dr. White for his use of the manufacturer's stent grafts." (*Id.*)

Plaintiff claims these so-called "kickbacks" gave Dr. White an incentive to perform stent graft procedures that may be medically unnecessary, and to seek out candidates for such procedures. (FAC ¶ 17.) The FAC depicts an instance in December 2013 where "***one of Plaintiff's patients*** ('Patient BH')" allegedly received a medically unnecessary stent graft at Dr. White's direction, and developed a serious complication from the procedure. (FAC ¶¶ 17-21, emphasis added.) Plaintiff alleges this conduct was part of a larger kickback scheme which often came "at the expense of patient safety," including "payment of kickbacks to other [unidentified] Harbor-UCLA doctors each time they used a particular medical device in treating a patient." (FAC ¶ 22.)

Plaintiff claims he "discovered additional instances of misconduct by Dr. White" from about April to June 2014, including "falsification of patient case records to appear eligible" for clinical trials sponsored by the National Institutes of Health ("NIH") and "false certification of medical need" for patients Dr. White had not examined, including Plaintiff's patients. (FAC ¶ 23.)

**C.      Plaintiff's Alleged Disclosures**

Plaintiff alleges that he "reported the above-described conduct, as well as more general concerns that Dr. White and others were compromising patient care in order to perform courses for third party medical device manufacturers, and utilizing specific medical devices in which Dr. White and others had a pecuniary interest."

486626.1

8

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1   (FAC ¶ 24.) According to the FAC, "Plaintiff first reported these issues" to Dr. De

2   Virgilio, then a senior Vascular Surgeon, and three non-parties: Timothy Van Natta,

3   M.D. (then the CMO of Harbor-UCLA), Bruce Stabile, M.D. (then Chief of

4   Surgery), and Delvecchio Finley (then CEO). (*Id*.) "Around the same time," Plaintiff

5   allegedly "reported his concerns to an [unnamed] NIH compliance officer," and

6   informed Dr. Van Natta and Dr. De Virgilio of this report. (FAC ¶ 25.) The FAC

7   does not specify when Plaintiff made these reports, but suggests he did so in 2014,

8   because by January 2015, he supposedly "lost confidence that hospital management

9   would stop the fraud scheme and patient endangerment." (FAC ¶ 26.)

10          On January 12, 2015, Plaintiff allegedly contacted the head of the County

11   District Attorney's Healthcare Fraud Division to inform her "of the ongoing fraud

12   scheme." (FAC ¶ 26.) On April 9, 2015, Plaintiff learned the District Attorney's

13   Office ("DA") had transferred the investigation to the California Department of

14   Justice ("DOJ"). (*Id*.) "Plaintiff thereafter informed Dr. Putnam, Dr. Van Natta, and

15   Dr. De Virgilio that he had reported Dr. White's conduct to law enforcement and

16   that a criminal investigation was underway." (*Id*.) Plaintiff alleges on information

17   and belief that Dr. White and Defendants learned of Plaintiff's disclosures through

18   unspecified "discussions among hospital personnel." (*Id*.)

19          **D.     The MEC's Investigation and Recommended Discipline**

20          On August 25, 2015, several months after Plaintiff's alleged disclosures, Dr.

21   White sent Dr. Putnam a letter asking that "corrective action be taken against

22   Plaintiff," because Plaintiff's "collection of information" regarding Dr. White's

23   alleged conduct ***violated federal and state medical privacy laws***. (FAC ¶ 29, citing

24   the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L.

25   No. 104-191, 110 Stat. 1936 (1996); *see*, *e.g.*, 42 U.S.C. §§ 1320d *et seq*., and

26   California's Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code

27   §§ 56 *et seq*.) Dr. White claimed he was adversely affected personally and

28   professionally by Plaintiff's conduct. (FAC ¶ 29.)

486626.1                                    9

The MEC "initiated an internal disciplinary procedure" in which it allegedly "sought to revoke Plaintiff's Professional Staff membership and privileges." (FAC ¶ 30.) According to the FAC, the PSA Bylaws provide that the MEC is responsible for "initiating disciplinary actions against medical staff at Harbor-UCLA and, where appropriate, dismissing medical staff and discontinuing medical privileges." (*Id*.)

However, the FAC neglects to mention that under the PSA Bylaws, disciplinary action may be initiated ***only after the matter has been investigated*** by "an *ad hoc* committee" appointed by "the chair of the department wherein the practitioner has such privileges." (RJN, Exh. 1 § 6.2-5.) Thus, initiation of an investigation is ***required*** by the PSA Bylaws, and is not retaliatory.

The FAC alleges that "[a]s part of this process, the MEC met with Dr. Yee," discussed Plaintiff's disclosures with him, "and asked Dr. Yee and DHS to ratify the MEC's proposed retaliatory employment action." (FAC ¶ 31.) According to the FAC, in or about April 2016, "Dr. Yee endorsed, ratified, encouraged, and approved" – in some unspecified manner – the unidentified adverse action against Plaintiff, supposedly with "full knowledge" of the alleged retaliatory motive (although the source of Dr. Yee's alleged "knowledge" is not identified). (*Id.*)

In the FAC, Plaintiff also alleges – for the first time – that Dr. Katz learned of Plaintiff's reports back in ***2014***, and "endorsed, permitted, and encouraged" the 2015-2016 MEC proceeding in some unspecified manner, supposedly with knowledge that it was retaliatory (which it was not). (FAC ¶ 32.) Plaintiff's only elaboration on this newly-minted allegation is that when the "President of the Union of American Physicians" supposedly "confronted Dr. Katz" with the ostensible "fact that the proceeding was retaliatory and should be stopped, Dr. Katz replied that he would 'let nature take its course.'" (*Id.*) Of course, it would have been highly improper for Dr. Katz to have interfered with an investigation of Plaintiff's potential violations of medical privacy laws.

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1    Under Article VI of the Bylaws, however, the Director and CMO of DHS –

2 who are not MEC members (*see* FAC ¶¶ 10, 12) – have *no role* in the investigation

3 or disciplinary process after it has been initiated, except that they are among those to

4 whom the MEC's recommendation is transmitted and to whom a final decision after

5 any appeal is delivered. (RJN, Exh. 1 §§ 6.2-5, 6.2-7, 6.2-8, 6.2-9, 7.6-4.)[1] The FAC

6 alleges *no facts* which would show how any "endors[ment]," "ratifi[cation],"

7 "encourage[ment]," "approv[al]," or "permi[ssion]" by Dr. Yee or Dr. Katz could

8 have been accomplished or would have had any impact. (FAC ¶¶ 10, 12, 31-32.)

9    Dr. Putnam informed Plaintiff via letter dated October 5, 2016, that the MEC

10 had voted to revoke Plaintiff's PSA membership and privileges at Harbor-UCLA

11 under Article VI of the Bylaws. (FAC ¶ 33.) The MEC's reason for this "proposed

12 action" was "Plaintiff's alleged 'unprofessional behavior' which purportedly created

13 a 'chaotic situation in the vascular division.'" (*Id*.) The FAC alleges that Dr. Putnam,

14 Dr. Vintch, Dr. Mahajan, and Dr. Lewis all voted in favor of this proposed

15 revocation (*id*.) – even though Dr. Mahajan was a *non-voting ex officio* member of

16 the MEC (RJN, Exh. 1, § 11.2-1.2) – and that Dr. Lewis "argued that [Plaintiff]

17 should be punished for his protected speech," although no details of this supposed

18 argument are offered. [2] (FAC ¶ 33.) Given that the records and proceedings of a

19 quality assurance committee are *strictly confidential and immunized from*

20

---

21 [1] The Director also shall be consulted by "the Governing Body" if that body

22 determines the MEC "failed" to initiate an investigation or recommend disciplinary

23 action against the weight of evidence and before directing the MEC to take such

24 actions. (RJN, Exh. 1 § 6.2-10.) The Bylaws define "the Governing Body" as the County's Board of Supervisors. (RJN, Exh. 1 at 5 [¶ 23].)

25 [2] The FAC later vaguely suggests that *all* "Defendants" voted to revoke Plaintiff's

26 staff membership and privileges (FAC ¶ 43), but it does not specifically allege that

27 Dr. Yee or Dr. Katz cast any such votes, nor does it explain how they could have

28 done since they were not MEC members. (FAC ¶¶ 10, 12.)

*discovery* under California Evidence Code § 1157, it is hard to imagine the foundation for Plaintiff's claims regarding how MEC members voted.

Plaintiff claims the allegations against him "are false" and a pretext for retaliating against him for his reports of Dr. White's conduct. (FAC ¶ 34.) But regardless of the truth or falsity of the allegations, *investigating* those allegations is not retaliatory, and indeed is *essential* where, as here, the magnitude of the allegations are violations of federal and state medical privacy laws. (FAC ¶ 29.)

*Significantly, Plaintiff exercised his right to request a hearing under the Bylaws.* (FAC ¶ 34, citing Bylaws § 7.4-2 [RJN, Exh. 1].) On or about November 10, 2016, Plaintiff received a Notice of Charges from Dr. Putnam, stating that a hearing would be conducted on MEC's proposed action, and reiterating the MEC's bases for that proposal. (FAC ¶¶ 35-36.)

The Bylaws provide that the hearing shall be before a Judicial Review Committee ("JRC") appointed by the MEC and composed of five "impartial" active staff members who "have not actively participated in the consideration of the matter involved at any previous level." (RJN, Exh. 1 §§ 7.4-1, 7.4-4, 7.6.) The FAC contains no allegations regarding the hearing or any decision thereon, reflecting the fact that *the hearing and decision process are not yet final*. (FAC ¶¶ 35-36; *see* RJN, Exh. 1 §§ 7.6.-5, 7.7 [JRC's decision is final but subject to final appeal to the Governing Body, defined in Exh. 1 at 5 [¶ 23] as County's Board of Supervisors].) As such, the recommendation by the MEC members is not even ripe for review.

### E.    The County's 25-Day Suspension of Plaintiff's Employment

Meanwhile, Dr. Mahajan, in his capacity as Harbor-UCLA's CMO, signed and gave Plaintiff a letter dated April 4, 2017, which notified him of *the County's* "intention to suspend Plaintiff's employment at Harbor-UCLA for 25 days." (FAC ¶ 37; RJN, Exh. 3.) This is the equivalent of a "*Skelly* notice" under California law. *See Skelly v. State Personnel Bd.*, 15 Cal. 3d 194, 215 (1975) (requiring notice and other procedures before discipline of public employee becomes effective).

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

The FAC alleges that this Suspension Notice cited "multiple unfounded HIPAA and CMIA violations for Plaintiff's reporting of Dr. White's conduct to the NIH and law enforcement as the reason for the proposed suspension," and specifically "stated that Plaintiff's actions violated [DHS's] Discipline Manual and Guidelines because the actions were outside the scope of Plaintiff's employment duties." (FAC ¶ 37.)

However, the Suspension Notice itself *did not reference* "Plaintiff's reporting of Dr. White's conduct," and the only "action[] . . . outside the scope" of his job duties mentioned in the letter was *Plaintiff's misuse of his position* to ask a clerk, Amanda Flores, to obtain a report of patients who underwent operative procedures dating back to July 2012, when Plaintiff was "*not employed at Harbor-UCLA*." (RJN, Exh. 3 at 5[¶¶ 9-13], emphasis added.) The Suspension Notice stated in pertinent part:

> Dr. Ryan, you violated departmental policies by your unauthorized request and review of patients' PHI [*i.e.*, protected health information] that were not under your care. In fact, your request included a time period in which you were not yet employed at Harbor-UCLA. *You used your County position for unauthorized access*. You did not have to request the broad search of surgical procedures or review the case information from other doctors to fulfill your job responsibilities as a Physician Specialist. When asked about this incident during the Department's administrative interview, you were dishonest and completely denied receiving patient information from other doctor's cases. Your statement is blatantly contradicted by the report that you were provided from Ms. Flores, which lists multiple patients from various doctors other than yourself. By accessing multiple patient's records without necessity and proper authorization and then lying about it during an internal investigation, you demonstrated a serious lapse in

1  judgment and caused DHS to question your professionalism and

2  integrity.

3  (RJN, Exh. 3 at 6.) The Suspension Notice also detailed Plaintiff's "outbursts of

4  anger, yelling, and invasion of personal space" while dealing with co-workers (*id*. at

5  6), and specifically identified two nurses, Ana Venegas and Mabel Rodriguez, as

6  targets of his abusive behavior. (*Id*. at 3-4.) Although Dr. Mahajan signed the

7  Suspension Notice as CMO (*id*. at 8), the FAC does not identify the County's

8  suspension decision as an "adverse employment action" undertaken by any

9  Defendant. (FAC ¶¶ 37, 43.)

10 **III.   ALL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FROM SUIT.**

11     Plaintiff's lone claim is for First Amendment retaliation under 42 U.S.C. §

12 1983, which provides: "Every person who, under color of [law] . . . subjects, or

13 causes to be subjected, any citizen of the United States . . . to the deprivation of any

14 rights … secured by the Constitution and laws, shall be liable to the party injured

15 . . . ." Government officials sued in their individual capacities, such as Defendants,

16 enjoy ***qualified immunity from suit*** under 42 U.S.C. § 1983 if their conduct "does

17 not violate clearly established statutory or constitutional rights of which a

18 reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

19 (1982); *cf. Hafer v. Melo*, 502 U.S. 21, 29 (1991) (qualified immunity applies to

20 state employees).

21     The principle of qualified immunity "is important to '"society as a whole."'"

22 *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (*per curiam*); *Harlow*, 457 U.S. at 814.

23 "Because qualified immunity is 'an immunity from suit rather than a mere defense to

24 liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'"

25 *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). Courts thus

26 adhere to "the fundamental principle that issues of qualified immunity ***should be***

27 ***determined at the earliest possible stage***." *Robinson v. Solano County*, 278 F.3d

28 1007, 1012 (9th Cir. 2002) (*en banc*) (emphasis added).

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1    The qualified immunity analysis consists of two prongs: (1) whether the

2    official violated Plaintiff's constitutional rights; and (2) whether those rights were

3    "clearly established" in the specific context of this case. *Dible v. City of Chandler*,

4    515 F.3d 918, 930 (9th Cir. 2008). Where, as here, a public employee claims

5    violation of his First Amendment rights, a "context-intensive, case-by-case

6    balancing analysis" is applied to determine whether qualified immunity attaches. *Id*.

7    District Courts have "sound discretion in deciding" which of these two prongs to

8    address first "in light of the circumstances in the particular case at hand." *Pearson v.*

9    *Callahan*, 555 U.S. 223, 236 (2009).

10    Qualified immunity may be adjudicated on a Motion to Dismiss where, as

11    here, its applicability appears on the face of the complaint. *See*, *e.g.*, *Leveto v.*

12    *Lapina*, 258 F.3d 156, 161 (3d Cir. 2001); *Dominque v. Telb*, 831 F.2d 673, 677 (6th

13    Cir. 1987) (defendant may move to dismiss based on qualified immunity if "the

14    facts pleaded would not show that his conduct violated clearly established law of

15    which a reasonable person should have known at the time"). "To survive a motion to

16    dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

17    a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

18    (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ.

19    P. 8(a)(2) (pleading must include a "short and plain statement of the claim showing

20    that the pleader is entitled to relief").

21    The plaintiff must plead "factual content that allows the court to draw the

22    reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

23    556 U.S. at 678. This standard does not demand "'detailed factual allegations,'" but

24    requires "more than an unadorned, the-defendant-unlawfully-harmed-me

25    accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). It also requires more than

26    "facts that are 'merely consistent with' a defendant's liability" or that offer the "sheer

27    possibility that a defendant has acted unlawfully." *Id*. It "will not do" for a pleading

28    to offer mere "labels and conclusions," "a formulaic recitation of the elements of a

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1   cause of action," or "naked assertions[s]" without "further factual enhancement."

2   *Twombly*, 550 U.S. at 555, 557. Although this Court must accept as true the FAC's

3   ***factual*** allegations, this tenet "is inapplicable to legal conclusions" and threadbare,

4   conclusory recitals "of the elements of a cause of action." *Id.* at 555. This Court also

5   may consider documents that are referenced in the FAC, even if not attached thereto

6   as exhibits (*e.g.*, FAC ¶¶ 30, 33, 34, 37, 42 [referencing Bylaws (RJN, Exh. 1) and

7   Suspension Notice (RJN, Exh. 3)]), and may deem those documents to be

8   incorporated by reference. *See*, *e.g.*, *Davis v. HSBC Bank*, 691 F.3d 1152, 1159-60

9   (9th Cir. 2012) (citing numerous cases).

10       Defendants submit the FAC's allegations show that they did not violate

11   Plaintiff's First Amendment rights at all. In any event, because those alleged rights

12   were not "clearly established" in the specific context of this case, Defendants are

13   entitled to qualified immunity. *Dible*, 515 F.3d at 930; *see Pearson*, 555 U.S. at 236.

14       **A.**    **None of the Defendants – Least of All Dr. Yee, Dr. Katz, or Dr.**

15           **Mahajan – Subjected Plaintiff to an Adverse Employment Action**

16           **in Retaliation for Exercising First Amendment Rights.**

17       Under the First Amendment, a government employer may not stifle free

18   speech rights that its employees "would otherwise enjoy as citizens to comment on

19   matters of public interest." *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968).

20   The Supreme Court has sought to strike "a balance between the interests of the

21   [public employee], as a citizen, in commenting upon matters of public concern and

22   the interest of the State, as an employer, in promoting the efficiency of the public

23   services it performs through its employees." *Id.*

24       The Ninth Circuit has "further refined" the *Pickering* balancing test "into a

25   five-step inquiry." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) (*en*

26   *banc*), *cert. denied sub nom. City of Burbank v. Dahlia*, 134 S. Ct. 1283 (2014).

27   These steps are:

28

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1   . . . (1) whether the plaintiff spoke on a matter of public concern; (2)

2   whether the plaintiff spoke as a private citizen or public employee; (3)

3   whether the plaintiff's protected speech was a substantial or motivating

4   factor in the adverse employment action; (4) whether the state had an

5   adequate justification for treating the employee differently from other

6   members of the general public; and (5) whether the state would have

7   taken the adverse employment action even absent the protected speech.

8   *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009), *cert. denied*, 558 U.S. 1110

9   (2010). The plaintiff bears the burden of proof on each of the first three steps of this

10  standard. *Id*. at 1070-71.

11  The Supreme Court has made clear that an objective standard applies to

12  retaliation claims under federal law: "a plaintiff must show that a reasonable

13  employee would have found the challenged action ***materially adverse***." *Burlington*

14  *N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citations omitted) (Title VII). In

15  the First Amendment context, this standard requires Plaintiff to show that the

16  alleged adverse employment action "well might have 'dissuaded ***a reasonable***

17  ***worker*** . . .'" from exercising his First Amendment rights. *See id*. (emphasis added);

18  *Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003) (applying Title VII test

19  to § 1983 claims). This standard is intended to "***screen out trivial conduct*** while

20  effectively capturing those acts that are likely to dissuade employees" from

21  protected conduct. *White*, 548 U.S. at 70 (emphasis added). Ordinarily, "petty

22  slights, minor annoyances, and simple lack of good manners will not create such

23  deterrence" under this standard. *Id.* at 68. "[T]he significance of any given act of

24  retaliation will often depend upon the particular circumstances. ***Context matters***. . . .

25  ***[A]n 'act that would be immaterial in some situations is material in others.'"*** *Id*. at

26  69 (emphasis added, citations omitted).

27  The ***only*** adverse employment action even arguably alleged in the FAC is that

28  "Defendants, and each of them, . . . ***vot[ed] to revoke*** Plaintiff's Professional Staff

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1   membership and privileges at Harbor-UCLA." (FAC ¶ 43 [emphasis added]. *But see*

2   *id.* ¶¶ 10, 12 *[Dr. Yee and Dr. Katz not alleged to be on MEC];* RJN, Exh. 1 §§ 6.2-

3   5, 6.2-7, 6.2-8, 6.2-9, 7.6-4 [Director and CMO not involved in MEC's investigative

4   or disciplinary processes after they are initiated]; *id.*, § 11.2-1.2 [Hospital's CMO is

5   an *ex officio* (*non-voting*) member of the MEC].) However, the FAC also admits

6   that Plaintiff exercised his right to a hearing on the proposed revocation, and

7   (correctly) does not indicate that any final decision on that hearing has occurred.

8   (FAC ¶¶ 34-36.)[3] *Thus, the MEC's recommendation – the only adverse action*

9   *arguably attributed to Defendants – has not been implemented as proposed*. (*Id.*)

10        The FAC's allegations thus establish that *none* of the Defendants subjected

11  Plaintiff to a materially adverse action by ostensibly voting for a proposed

12  revocation which has not been implemented. *Even if* each individual vote for

13  revocation could have been deemed materially adverse *if* the proposal had been

14  implemented, under the factual context presented by the FAC, *each alleged vote*

15  *proved to be immaterial and not actionable, as a matter of law*. *White*, 548 U.S. at

16  68-70; *Coszalter*, 320 F.3d at 976. At most, these alleged votes amounted to no

17  more than "criticism" of Plaintiff's actions, which is inherently part of the free

18  exchange of ideas that the First Amendment protects. *See*, *e.g.*, *New York Times Co.*

19  *v. Sullivan*, 376 U.S. 254, 273 (1964) ("neither factual error nor defamatory content

20

21  _____

22  [3] The FAC notes that the County issued an "intention to suspend Plaintiff's

23  employment at Harbor-UCLA for 25 days," but does not allege that any Defendant

24  participated in that process, except that Dr. Mahajan signed the Suspension Notice
    as CMO of Harbor-UCLA. (FAC ¶ 37; RJN, Exh. 3 at 8.) Moreover, Plaintiff's

25  *employment* is separate from his PSA membership and privileges, and the County's

26  employment decision is not alleged in the FAC as an adverse action by any
    Defendant. (FAC ¶ 43.) As discussed herein, *no JRC review or final action on*

27  *Plaintiff's PSA membership or privileges is alleged to have occurred*.

28

1   suffices to remove the constitutional shield from criticism of official conduct").[4]

2   Plaintiff's claim is particularly groundless as to Dr. Yee, Dr. Katz, and Dr.

3   Mahajan. Although one paragraph of the FAC frivolously lumps all "Defendants"

4   together as allegedly having voted to revoke Plaintiff's PSA privileges and

5   membership (FAC ¶ 43), the FAC elsewhere admits that ***Dr. Yee and Dr. Katz were***

6   ***not members of the MEC*** (*compare id*. ¶¶ 10, 12 *with id*. ¶¶ 6-9, 11 [all other

7   Defendants were on MEC]). Instead, the FAC alleges that Dr. Yee and Dr. Katz

8   "endorsed," "ratified," "approved," and "permitted" the MEC's recommendation in

9   entirely unspecified ways, and that Dr. Katz "encouraged" the action by some

10   oblique comment (*id*. ¶¶ 31-32) – even though the Bylaws provide ***no role*** for the

11   Director or CMO of DHS in the investigative or disciplinary processes after they are

12   initiated (RJN, Exh. 1 §§ 6.2-5, 6.2-7, 6.2-8, 6.2-9, 7.6-4). The Bylaws also make

13   clear that Dr. Mahajan was a ***non-voting*** *ex officio* member of the MEC (*id*. § 11.2-

14   1.2), thus negating Plaintiff's conclusory, speculative assertion that Dr. Mahajan

15   voted to revoke Plaintiff's staff privileges and membership.

16   Since MEC members' mere votes in favor of an unimplemented proposed

17   revocation do not constitute "adverse employment actions," the same conclusion

18   applies with even greater force to so-called "approv[al]" or "encourage[ment]" of

19   that unimplemented proposal by persons with ***no role*** in the process. *White*, 548

20   U.S. at 68-70; *Coszalter*, 320 F.3d at 976. Plaintiff's inability to establish that Dr.

21   Yee, Dr. Katz, Dr. Mahajan, or any other Defendant subjected him to an "adverse

22   employment action" is fatal to his § 1983 claim. *Eng*, 552 F.3d at 1070; *Coszalter*,

23

24   _____

25   [4] Plaintiff does not, and cannot, allege that a ***mere unfulfilled possibility*** of
     revocation would have dissuaded a reasonable physician in Dr. Ryan's position from
26   speaking out. At any rate, the FAC reveals the potential for revocation was created
     not by any Defendant, but by the request of a non-party (Dr. White) for corrective
27   action (FAC ¶ 29), ***which the PSA had a duty to investigate***. (RJN, Exh. 1 § 6.2-5.)

28

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1  320 F.3d at 976. This is a sufficient basis, by itself, for granting Defendants' Motion

2  to Dismiss.

3        **B.**    **The Contours of the Rights Against First Amendment Retaliation**

4             **Alleged by Plaintiff Were Not, and Are Not, "Clearly Established"**

5             **Within the Particular Factual Context of This Case.**

6        To overcome qualified immunity, Plaintiff must show the "contours" of his

7  asserted rights were "sufficiently clear that a reasonable official would understand

8  that what he [or she] is doing violates that right" – *i.e.*, "that in the light of pre-

9  existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739

10  (2002) (internal quotation marks omitted). This involves a standard of "objective

11  reasonableness." *Harlow*, 457 U.S. at 818. It immunizes from suit "all but the

12  plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475

13  U.S. 335, 341 (1986).

14        The Supreme Court "repeatedly" has instructed courts "not to define clearly

15  established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742

16  (2011) ("The general proposition, for example, that an unreasonable search or

17  seizure violates the Fourth Amendment is of little help in determining whether the

18  violative nature of particular conduct is clearly established.") (citations omitted);

19  *Sharp v. County of Orange*, No. 15-56146, 871 F.3d 901, 2017 U.S. App. Lexis

20  18148, at *21 (Sept. 19, 2017) (while precedents "establish a general rule that an

21  unreasonable mistake of identity renders an arrest unconstitutional, we cannot

22  simply apply that general rule to the facts of this case").

23        Instead, ***"the clearly established law must be 'particularized' to the facts of***

24  ***the case,"*** or else "[p]laintiffs would be able to convert the rule of qualified

25  immunity . . . into a rule of virtually unqualified liability simply by alleging

26  violation of extremely abstract rights.'" *White*, 137 S. Ct. at 552 (emphasis added,

27  citations omitted); *Dunn v. Castro*, 621 F.3d 1196, 1201 (9th Cir. 2010) (appropriate

28  question was not whether a father has a clearly-established right to companionship

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

of his child in the abstract, but "whether a reasonable prison official could have believed that terminating [a prisoner's] right to receive visits from his children was lawful, in light of clearly established law and the information he possessed"). As the Ninth Circuit recently explained:

> Except in the rare case of an "obvious" instance of constitutional misconduct (which is not presented here), Plaintiff[] must "*identify a case* where [a public official] acting under similar circumstances as [defendants] was held to have violated the [First] Amendment." . . . In other words, Plaintiff[] must point to prior case law that articulates a constitutional rule specific enough to alert *these* [officials] *in this case* that *their particular conduct* was unlawful. To achieve that kind of notice, the prior precedent must be "controlling" – from the Ninth Circuit or Supreme Court – or otherwise be embraced by a "consensus" of courts outside the relevant jurisdiction. . . .

*Sharp*, 2017 U.S. App. Lexis 18148, at *21 (italics in original) (addressing Fourth Amendment violations) (quoting *White*, 137 S. Ct. at 552, and *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

The Ninth Circuit has reiterated that "because whether a public employee's speech is constitutionally protected turns on a context-intensive, case-by-case balancing analysis, *the law regarding such claims will rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity." Dible*, 515 F.3d at 930 (citations omitted), *quoted in Eng*, 552 F.3d at 1076 n.6. *The instant case* "*would not be one of those rarities*." *Id.* (emphasis added); *accord Demers v. Austin*, 746 F.3d 402, 417 (9th Cir. 2014) ("because there is no Ninth Circuit law on point to inform defendants about whether or how *Garcetti* might apply to a professor's academic speech, we cannot say that the contours of the right in this circuit were 'sufficiently clear that every reasonable official would have understood' that this conduct violated that right").

1.    **There Is No "Clearly Established Law" Under Which Defendants' Conduct Constituted an Adverse Employment Action.**

The discussion above (pp. 16-20) shows none of the Defendants subjected Plaintiff to an adverse employment action. At the very least, there is no "clearly established law" which would have put Defendants on notice that their alleged actions would have dissuaded a reasonable physician in Plaintiff's position from exercising his First Amendment rights. *White*, 548 U.S. at 68; *Coszalter*, 320 F.3d at 976. The five Defendants on the MEC are accused only of "***voting*** to revoke Plaintiff's Professional Staff membership and privileges at Harbor-UCLA" (FAC ¶¶ 33, 43 [emphasis added]; *but see* RJN, Exh. 1 § 11.2-1.2 [Dr. Mahajan could not vote]), and Dr. Yee and Dr. Katz only allegedly ***"encouraged"*** the MEC's recommendation in some unspecified and ***unofficial*** manner (FAC ¶¶ 10, 12, 31-32 [emphasis added]; RJN, Exh. 1 §§ 6.2-5, 6.2-7, 6.2-8, 6.2-9, 7.6-4).

Notably, Plaintiff's FAC admits the MEC-directed investigation was triggered by Dr. White's August 2015 letter, which reported Plaintiff's alleged violations of federal and state medical privacy laws. (FAC ¶ 28; RJN, Exh. 3 at 3-6.) Plaintiff plainly has no "clearly established" Constitutional right to ***avoid being investigated*** for his own alleged illegal conduct simply because of his own reports about Dr. White dating back to the previous year (2014). The intervening event of the August 2015 letter breaks the causal nexus alleged by Plaintiff. *See Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 472 (6th Cir. 2012) ("intervening legitimate reason to discipline [plaintiff] . . . dispels an inference of retaliation based on temporal proximity").

Moreover, Defendants' alleged votes and approval all came ***before*** the hearing to which Plaintiff admittedly was entitled under the Bylaws. (FAC ¶¶ 34-36.) The FAC does not – and cannot – allege that the hearing process has concluded. (*Id.*) Because there is ***no controlling precedent*** which suggests such alleged votes or

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

unimplemented "approval" constitute an adverse employment action under the instant facts, there is *no "clearly established law"* that would have put Defendants on notice that their actions, as alleged, would have violated Plaintiff's First Amendment rights. This is yet another basis for granting Defendants' Motion to Dismiss based on qualified immunity. *White*, 137 S. Ct. at 552; *Sharp*, 2017 U.S. App. Lexis 18148, at *21; *Dible*, 515 F.3d at 930.

> **2.    It Would Not Have Been Readily Apparent to a Reasonable Public Official that Plaintiff Spoke as a Public Employee on Matters of Public Concern.**

Plaintiff claims that he "exercised his constitutional right to free speech and to petition the government by reporting Dr. White's fraudulent and unlawful conduct" to the NIH and the DA, and that as a result, "Defendants retaliated against Plaintiff through adverse employment actions." (FAC ¶ 41.) But *even if* Plaintiff could demonstrate that he spoke on a matter of "public concern," *Dahlia*, 735 F.3d at 1067, Defendants are aware of no "controlling" precedent that "clearly establishes" this proposition. The FAC offers *no legal support* for its conclusory assertions that Dr. White's alleged conduct was "unlawful," nor does it suggest that the NIH or the DA (or the state DOJ) found that Plaintiff's allegations established unlawful conduct even on their face. Plaintiff's failure to identify "clearly established law" putting Defendants on notice that he spoke on matters of "public concern" is another independently sufficient basis for finding that Defendants are entitled to qualified immunity. *Ashcroft*, 563 U.S. at 742; *Dible*, 515 F.3d at 930.

There also is no "clearly established," controlling precedent that would have put Defendants on notice that Plaintiff supposedly was speaking as a private citizen, rather than as a County Hospital employee. As the Supreme Court has held, "a governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public." *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004). "Restricting speech *that*

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1   *owes its existence to a public employee's professional responsibilities* does not

2   infringe any liberties the employee might have enjoyed as a private citizen."

3   *Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006) (emphasis added) (public

4   employee may be disciplined for statements made pursuant to official duties).

5   Conversely, speech that has "no official significance and [bears] similarities to

6   [speech activities] by numerous citizens every day" falls outside a public employee's

7   job duties and may be protected. *Id*. at 422.

8         Under *Garcetti*, "courts must make a 'practical' inquiry when determining the

9   scope of a government employee's professional duties." *Dahlia*, 735 F.2d at 1063

10   (quoting *Garcetti*, 547 U.S. at 424-25); *accord Brandon v. Maricopa County*, 849

11   F.3d 837, 846 (9th Cir. 2017) (reversing jury verdict for plaintiff who allegedly was

12   terminated for comments she made to newspaper about a case she was handling,

13   which "fell under the broad set of official duties she owed Maricopa County as its

14   attorney"); *see Kennedy v. Bremerton Sch. Dist.*, 869 F.3d 813, 827-28 (9th Cir.

15   2017) (football coach's post-game prayer at 50-yard line, within view of students

16   and parents, fell within scope of his job duties); *Johnson v. Poway Unified Sch.*

17   *Dist.*, 658 F.3d 954, 966-70 (9th Cir. 2011) (math teacher spoke as a public school

18   employee even when espousing his personal religious views to students). Plaintiff

19   can survive a motion to dismiss *only if* his factual allegations are sufficient to

20   "support a reasonable inference that he acted outside of his professional duties."

21   *Dahlia*, 735 F.2d at 1076 (court may "reject, as implausible, allegations that are too

22   speculative to warrant further factual development").

23         Plaintiff's FAC accuses Dr. White of performing a medically unnecessary

24   procedure *on one of Plaintiff's own patients;* indeed, this is the only specific

25   example the FAC offers of the alleged "kickback" scheme. (FAC ¶¶ 16-23.) All of

26   Plaintiff's reports – both internally to "hospital management" and externally to the

27   NIH and DA – allegedly were motivated by his stated concerns about "patient care"

28   and "endangerment" (*id*. ¶¶ 24-26). Those matters obviously are central to Plaintiff's

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1   job duties as a Staff Vascular Surgeon for a County Hospital (*id*. ¶ 1), just as the

2   fiduciary duty of loyalty is central to an attorney's job duties for her client. *Brandon*,

3   849 F.3d at 845. Thus, a reasonable person in the position of any of the Defendants

4   would have concluded ***Plaintiff was speaking pursuant to his professional***

5   ***responsibilities as a publicly-employed physician***, not as a private citizen. *See*

6   *Demers*, 746 F.3d at 417; *Dible*, 515 F.3d at 930.

7        Plaintiff claims that his speech activities "were not taken pursuant to any

8   official job duties," and that this was "confirmed" in the April 4, 2017 letter

9   notifying Plaintiff of the intent to suspend his employment. (FAC ¶¶ 37, 42.) But

10  this is a mere "formulaic recitation of the elements" of a First Amendment

11  retaliation claim, *Twombly*, 550 U.S. at 555, and lacks sufficient "factual content" to

12  raise a "reasonable inference" that Plaintiff spoke as a private citizen rather than

13  pursuant to his public employment. *Iqbal*, 556 U.S. at 678-79; *Dahlia*, 735 F.2d at

14  1076. In any event, the FAC misrepresents the Suspension Notice, which makes

15  clear that Plaintiff went outside his job duties ***not*** in connection with any speech

16  activities, but instead by his "unauthorized request and review" of protected health

17  information of other doctors' patients whose care predated Plaintiff's employment at

18  Harbor-UCLA, and then by lying about this misconduct. (RJN, Exh. 3 at 6.)

19       The facts pled in the FAC therefore fail to show that any of the Defendants

20  violated Plaintiff's First Amendment rights, or that those rights were "clearly

21  established" in the context of this case. Accordingly, Defendants are entitled to

22  qualified immunity, and their Motion to Dismiss should be granted. *Pearson*, 555

23  U.S. at 236; *Eng*, 552 F.3d at 1070; *Dible*, 515 F.3d at 930; *Robinson*, 278 F.3d at

24  1012. Because Plaintiff cannot allege any facts to overcome qualified immunity, the

25  dismissal should be without leave to amend. *See Moore v. Kayport Package*

26  *Express*, 885 F.2d 531, 538 (9th Cir. 1989) ("Leave to amend need not be given if a

27  complaint, as amended, is subject to dismissal.").

28

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

**IV.   THE FAC FAILS TO STATE A CLAIM FOR VIOLATION OF § 1983.**

The discussion above at pages 16-25 shows that Plaintiff has failed to state facts sufficient to establish that any of the Defendants subjected him to an "adverse employment action" in retaliation for allegedly speaking "as a private citizen" on matters of "public concern." *Eng*, 552 F.3d at 1070; *Coszalter*, 320 F.3d at 976. As such, the FAC does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" for First Amendment retaliation under § 1983. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This is an additional basis, along with qualified immunity, to grant Defendants' Motion to Dismiss, without leave to amend. *Moore*, 885 F.2d at 538.

**V.   CONCLUSION**

Defendants respectfully ask this Court to grant their Motion to Dismiss, without leave to amend.

DATED:  October 27, 2017

BALLARD ROSENBERG
GOLPER & SAVITT. LLP

By: _____
John J. Manier
Attorneys for Defendants BRANT PUTNAM,
M.D., JANINE VINTCH, M.D., ANISH
MAHAJAN, M.D., CHRISTIAN DE
VIRGILIO, M.D., HAL F. YEE, M.D., ROGER
LEWIS, M.D., and MITCHELL KATZ, M.D.

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436