

**Health Services**
LOS ANGELES COUNTY

Mitchell H. Katz, M.D.
Director

Hal F. Yee, Jr., M.D., Ph.D.
Chief Medical Officer

**HUMAN RESOURCES DIVISION**
PERFORMANCE MANAGEMENT
5555 Ferguson Drive, Suite 220-10
Commerce, California 90022
Phone: (323) 890-8428
Fax: (323) 890-8331
www.dhs.lacounty.gov



Board of Supervisors

Hilda Solis
First District

Mark Ridley-Thomas
Second District

Sheila Kuehl
Third District

Janice Hahn
Fourth District

Kathryn Barger
Fifth District

**CONFIDENTIAL**

April 4, 2017



Plfs. EXHIBIT 1
WITNESS: Hal Yee
DATE: 7/11/17
RENETTA K. THOMPSON
CSR

Timothy Ryan, M.D.
417 W. 39th Street
San Pedro, CA 90731

Dear Dr. Ryan:

### NOTICE OF INTENT TO SUSPEND

This letter is to notify you of the Department of Health Services (DHS) intent to suspend you for twenty-five (25) calendar days from your permanent position of Physician Specialist, Department of Surgery, Harbor-UCLA Medical Center, and from County service.

### BASIS

This proposed action is based on the DHS Discipline Manual and Guidelines (DM&G), the Code of Conduct, County of Los Angeles, Department of Human Resources Policies, Procedures, and Guidelines, Harbor-UCLA policies and procedures, and related subsections as follows:

DM&G Section 400: (Exhibit A)

- Subsection B. **Basic Job Performance**. Item No. B5: Performing other than assigned duties and/or working outside scope of duties (or granted privileges) without authorization. (Exhibit A at p. 13.)

- Subsection D. **Disruptive Behavior: Harassment, Discrimination, and Discourtesy.** Item No. D9: Discourtesy, or failing to work in a harmonious or professional manner (including making false, abusive, vicious, or malicious statements) while on County time, or on/in County property, or assignment. (Exhibit A at p. 18.)

- Subsection E. **Ethical Conflicts**. Item No. E15: Using official position, office, County ID., or DHS Internet logon I.D. for unauthorized access or use. (Exhibit A at p. 21.)

"To ensure access to high-quality, patient-centered, cost-effective health care to Los Angeles County residents through direct services at DHS facilities and through collaboration with community and university partners."



Timothy Ryan, M.D.
Page 2

- Subsection F. **False Statements, Dishonesty.** Item No. F4: Making untruthful, misleading or unreasonably inaccurate statements during an administrative or internal investigation. (Exhibit A at p. 22.)

- Subsection G. **General Misconduct and Inappropriate Behavior.** Item No. G11: Failure to comply with County or Departmental policies, procedures, rules, and regulations, Penal and/or Safety codes. (Exhibit A at p. 25.)

- Subsection K. **Knowledge/Information Acquisition, Maintenance, and Transfer.** Item No. K7: Improper access, use, or disclosure of confidential and/or protected patient information (including but not limited to medical records). (Exhibit A at p. 31.)

You acknowledged receipt of the DM&G on October 4, 2013. (Exhibit B.)

DHS Policies and Procedures:

- DHS Policy No. 361.8: **Minimum Necessary Requirements for Use and Disclosure of PHI.** This policy states, "Minimum necessary is based on a need to know, and is the limited health information required to accomplish the intended purpose of the use or disclosure or request. Each DHS facility shall make reasonable efforts to limit the use, disclosure of, and requests for PHI to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request." (Exhibit C.)

- DHS Policy No. 361.10: **Disciplinary Actions for Failure to Comply with Privacy Policies and Procedures.** Unauthorized acquisition, viewing, access, use, and/or disclosure of protected health information, or the failure to maintain and safeguard PHI is subject to disciplinary action, including, but not limited to, verbal counseling, written warning, reprimand, suspension, and discharge, in accordance with the provisions of Los Angeles County Civil Service rules, DHS Discipline Manual and Guidelines, and DHS Policy No. 747, "Disciplinary Action." (Exhibit D.)

Code of Conduct (Exhibit E)

*Confidentiality*

Patient Information

We collect and maintain patient medical, financial/billing, social and family information to provide the best possible care. We realize the sensitive nature of this information and are committed to maintain its confidentiality.

The Department has developed policies to protect the privacy and security of protected health information, in compliance with the Health Insurance Portability and Accountability Act of 1996 (HIPAA) Privacy and Security Rules. You must never use or disclose protected health information unless required/permitted by law. **No workforce member has a right to any patient information other than what is necessary to perform his/her job.** (Emphasis added)

Timothy Ryan, M.D.
Page 3

This proposed discipline is consistent with the County of Los Angeles Civil Service Rule 18.031, (Exhibit F), which states:

> Failure of an employee to perform his or her assigned duties so as to meet fully explicitly stated or implied standards of performance may constitute adequate grounds for discharge, reduction or suspension. Where appropriate, such grounds may include, but are not limited to, qualitative as well as quantitative elements of performance, such as failure to exercise sound judgment, failure to report information accurately and completely, failure to deal effectively with the public, and failure to make productive use of human, financial and other assigned resources. Grounds for discharge, reduction or suspension may also include any behavior or pattern of behavior which negatively affects an employee's productivity, or which is unbecoming of a county employee; or any behavior or condition which impairs an employee's qualifications for his or her position or for continued county employment.

This proposed level of discipline is also consistent with DHS DM&G, Disciplinary Action, §200. **Progressive and Non-Progressive Discipline**, which states, in pertinent part:

> Circumstances in some situations may require bypassing progressive discipline.
>
> Conduct which may be appropriate for bypassing progressive discipline includes, but is not limited to, conduct which an employee should know to be unacceptable without specific notice from the Department. This includes behavior such as dishonesty, illegal conduct, or any conduct which places the Department in violation of any state or federal law, court order, or in jeopardy of liability.

The seriousness of the conduct, the frequency of its occurrence, and the attitude of the employee regarding the conduct are among factors that may contribute to non-progressive discipline. Such acts may result in discharge without consideration of prior service or imposition of previous discipline. (Exhibit F1.)

## FACTS

The facts supporting this proposed action are as follows:

Discourtesy: Ana Venegas

1. In early 2016, Ana Venegas, Registered Nurse II, received a call from Operating Room (OR) 1 asking to get the next patient ready for surgery. (Exhibit G at p.1.) Ms. Venegas could not leave her desk to get the next patient because the clerk and the other nurses were either at lunch or with other patients. (Id.)

2. Less than five (5) minutes after the initial phone call, she called OR 1 to follow up with how close the staff were to finishing with the current patient in the room. (Exhibit G at p.1.) You answered the phone and when Ms. Venegas asked for the nurse who had called for the next patient, you screamed that you had called for the next patient. Ms. Venegas then asked how much time there was before the current patient was finished as the time can vary. (Id. at p.2.) You then hung up the phone and walked to the nursing station where Ms. Venegas was seated. Id.

Timothy Ryan, M.D.
Page 4

3. You stood over the nursing station counter, pointed your finger in Ms. Venegas' face and stated, "I am the doctor and you are the nurse. You do what I tell you to do. Since when do nurses not follow orders?" (Exhibit G at p. 2-3.) Ms. Venegas approximated her height as 4'11" and your height as 6'2." (Id. at p. 2.) Ms. Venegas described your face as red and that you were spitting as you screamed at her. (Id. at p.3.)

4. Ms. Venegas explained that the patient would be ready soon because a nurse had come back from her break and Ms. Venegas had directed her to get the next patient ready. (Exhibit G at pp. 2-3.) You responded, "You have no idea how much money you are wasting by having the OR empty. It is a lot of money." (Id.) Ms. Venegas felt, "extremely uncomfortable" and stopped replying to you.

Discourtesy: Mabel Rodriguez

5. On March 4, 2016, at approximately 8:00 a.m., when Mabel Rodriguez, Relief Nurse, saw you in the preparation area, she commented, "wow, what are you doing here so early?" (Exhibit H at p.1.) You became upset and started to raise your voice at Ms. Rodriguez. Ms. Rodriguez then tried to change the subject and asked which side you wanted the C-arm machine.[1] You sarcastically responded, "You should know by now, how long have you been working here?" Ms. Rodriguez was embarrassed by your comment and asked you to not talk to her in, "that way." You continued to argue with her so she asked you again to not speak to her, "that way." You began raising your voice and stated that if she or any other nurse has a problem with your tardiness, to see you directly. (Id.)

6. Ms. Rodriguez became upset and walked away to set up the machine. Ms. Rodriguez set up the machine on the wrong side and walked to the control room because she was frustrated. (Exhibit H at p.2.) When Ms. Rodriguez stated that she was upset because she could not think straight and put the machine on the wrong side, you immediately started to yell at her about her comment regarding your tardiness. Ms. Rodriguez asked you to stop yelling at her and speak privately with her if you wanted to discuss the comment. Ms. Rodriguez stated that her request, "triggered" you and you began yelling loudly, "you are going to listen to me now!" (Id. and Exhibit I.) You then stood approximately one inch away from her face and pointed your finger at her, leaving no personal space. (Id. at pp.2-3.) Ms. Rodriguez again asked you to stop yelling at her but you would not stop. (Exhibits H at p.3 and I.)

7. Carla Mitchell, Registered Nurse II, was in the control room and believed that you were going to strike Ms. Rodriguez when she saw you move, "into [Ms. Rodriguez's] face and space" with your finger in her face. Ms. Mitchell asked you, "what is wrong with you?" (Exhibits H and I.) You answered that if Ms. Rodriguez was so concerned with your attendance, she should contact an agency. (Exhibit I.)

8. You later apologized to Ms. Rodriguez and when she stated that you were clearly upset about "something else," you told her that you had been notified about your tardiness the day before. (Exhibit H at p. 3.)

---

[1] A machine used to take X-rays.

### Inappropriate Access of PHI

9. In early 2015, you gave Amanda Flores, Intermediate Clerk, a list of operative procedures with their corresponding CPT (current procedural technique) codes (Exhibits J and K) and asked her to provide you a report of all patients who underwent the listed operative procedures from July 2012 to early 2015. (Exhibit J.)

10. The report that was given to you contained patient names, description of the operative procedure performed on the patients, age and sex of patients, the diagnosis, and the name of the surgeon assigned to the case. (Exhibits J and L.) Specifically, the report contained patient information for cases that you were not assigned to and for a time period[2] that you were not employed at Harbor-UCLA. (Exhibits J and L.)

### Misleading and False Statements During an Investigation

11. On January 26, 2017, you and your representative, Mark Quigley, met with Cathy Yoo and Nairi Gevorki, Performance Management Investigators, for an administrative interview. Prior to the start of the administrative interview, you read and reviewed the administrative rights subject form ("Admin Rights"). (Exhibit M.) The Admin Rights Subject Form states that you are required to "answer the interview questions truthfully to the best of your knowledge and belief..." (Id.)

12. During the interview, you admitted that you used CPT codes to request a search from Ms. Flores. However, you stated that you used CPT codes because doing a case search using your name would not capture all your cases as some of your patients were listed under Dr. White's name. (Exhibit M1 at p. 10 and N at p. 4.) You **then denied that you requested or received any case information about other doctors from your search request to Ms. Flores.** You further stated that you knew that using CPT codes would exclude Dr. White and Dr. Carlos Donayre because they did not perform the specific procedure codes that you used for your search. (Id.)

13. The report that you received from your requested search clearly includes case information from multiple doctors and for patients prior to your employment with the County. (Exhibit L.)

## ADMINISTRATIVE INTERVIEW

14. During the administrative interview on January 26, 2017, you also stated the following in addition to the above:

### Response to Allegations of Discourtesy: Ana Venegas

- In early 2016, after you had asked for the next patient to be prepped for surgery, you received a call from Ms. Venegas stating that they had not called for the next patient in order to prevent the patient from having to wait in the pre-op area. (Exhibit M1 at p.7 and Exhibit N at p.3.) At this time, there was a "push" for room turnover and you felt Ms. Venegas did not want to do any work. You then hung up the phone and went to

---

[2] ...termination of employment with DHS in October of 2013. The query was for cases starting in July 2012 prior to your employment.

the nursing station to speak to Ms. Venegas. You stated that you were probably agitated but deny yelling at Ms. Venegas. You deny stating "I am the doctor, you are the nurse, you are not to question me, you are to do what I say." You also deny standing over her. (Id.)

### Response to Allegations of Discourtesy: Mabel Rodriguez

- On April 4, 2016, you were offended by Ms. Rodriguez's comment about your work hours because you often work more than forty (40) hours a week. (Exhibits M1 at p. 5 and N at p.2.) When you told her to call the Auditor controller if she was concerned about your hours, Ms. Rodriguez threw her hand in your face and said that she did not have to listen to you. (Id.) You then followed her to the control room to tell her not to throw her hand in your face. (Exhibits M1 at p. 6. And Exhibit O at p. 3.) She repeated that she did not have to listen to you. You stated that you may have been pointing at her but you do not remember ever putting your finger in her face. You also deny standing in her personal space. Both of you were speaking loudly but not yelling. After this incident you apologized to her and she said "we're good" or words to that effect. Since this incident, you have worked with Ms. Rodriguez without any issues. (Id.)

15. You were given the opportunity to provide an affidavit. To date, you have not provided an affidavit.

### IMPACT

Dr. Ryan, you violated departmental policies by your <u>unauthorized</u> request and review of patients' PHI that were not under your care. In fact, your request included a time period in which you were not yet employed at Harbor-UCLA. You used your County position for unauthorized access. You did not have to request the broad search of surgical procedures or review the case information from other doctors to fulfill your job responsibilities as a Physician Specialist. When asked about this incident during the Department's administrative interview, you were dishonest and completely denied receiving patient information from other doctor's cases. Your statement is blatantly contradicted by the report that you were provided from Ms. Flores, which lists multiple patients from various doctors other than yourself. By accessing multiple patient's records without necessity and proper authorization and then lying about it during an internal investigation, you demonstrated a serious lapse in judgment and caused DHS to question your professionalism and integrity.

Also, your response to your coworkers with outbursts of anger, yelling, and invasion of personal space is completely inappropriate and will not be tolerated. Your actions directly affect the work environment and has caused staff to feel uncomfortable. If you feel that staff is behaving inappropriately or not following established procedures, you can address any issue with management or have a discussion directly with the people involved rather than confronting them in an unprofessional manner or speaking about the allegations to staff not involved in the matter. As a County workforce member and a Physician, you are required to act with a high level of professionalism toward all staff. Your behavior towards your co-workers is highly offensive and violates County policies. You are reminded that you are expected to conduct yourself in a courteous, cooperative, and professional manner, and treat co-workers, patients, and superiors with respect at all times.

Timothy Ryan, M.D.
Page 7

## WORK HISTORY AND PERTINENT BACKGROUND

In deciding to take this proposed action against you, management reviewed and gave consideration to your entire work record.

16. You entered County service on October 4, 2013 as a Physician Specialist. Your duties and responsibilities at Harbor-UCLA may include, but are not limited to the following:

    - Perform medical work in a specialized medical field, including specialized surgical procedures within a specialty field.
    - Prescribe drugs and/or therapy, monitor patients' progress, record observations and changes, and adjust treatments as required.
    - Conduct training or assist in the training of interns and resident physicians.
    - Consult with staff physicians and para-medical personnel regarding care of patients and medical and diagnostic work performed.
    - Provide consultation to other medical services, including specialists in other fields.
    - Conduct the more difficult post mortem examination and may provide training and lead man supervision over other physicians engaged in these activities.
    - Confer with medical and professional personnel in such related fields as toxicology in order to discover the main and contributing causes of death. (Exhibit O.)

17. Your performance for the most recent Performance Evaluations (PE) was rated as follows: October 14, 2013 to April 4, 2014, "Met Expectations." (Exhibit P.)

18. A review of your record reveals that there is no prior formal discipline against you.

## CONCLUSION

Dr. Ryan, your unauthorized access to a list of surgical procedures that included procedures conducted by other surgeons with protected patient information was unnecessary and not related to a legitimate business reason. In addition to reflecting poor judgment, this unauthorized access was a violation of departmental guidelines and policies meant to safeguard the private medical information of patients who place their trust in the County. You then continued to show a disregard for Department policy by provide false information to the Department during an administrative investigation and completely denying receiving information contained in the report that you requested. Your conduct caused concern to the Department due to actions and your lack of accountability.

Also, your angry behavior and threatening body language not only violates the Department's written policy and procedures but also creates a disruptive environment and is not conducive in creating a healthy, professional workplace.

Due to your unauthorized access of PHI and your discourteous behavior, the Department intends to suspend you for twenty-five (25) calendar days from your permanent position of Physician Specialist.

This letter may be amended to include additional charges, facts, and/or specific information.

## EMPLOYEE ASSISTANCE PROGRAM

Timothy Ryan, M.D.
Page 8

The County of Los Angeles has an Employee Assistance Program EAP that provides counseling services addressing both personal and job-related issues. If you wish to make an appointment, you may call (213) 738-4200. The first appointment is on County time as long as you inform your supervisor, in advance, of the scheduled date. Should there be subsequent EAP appointments, you will be required to use your own time. You must, again, give advance notice of any scheduled appointment and request time-off as you would any other time-off if your appointment(s) are during your working hours.

**EMPLOYEE RIGHTS**

All written materials and related documentation upon which this action is based have been attached for your review. You and/or your representative have the right to respond either orally, in writing or both to the charges contained in this letter. If you choose to respond in writing, you have ten (10) business days from the date this letter was mailed or personally served to you to provide your response to Maria Lorena Andrade-Guzman, Chief, Performance Management, DHS, Human Resources, 5555 Ferguson Drive, Room 22010, Commerce, CA 90022.

If you wish to respond in person or in writing, please contact Cathy Yoo, Performance Management Investigator, at (323) 869-7023. You must contact Ms. Yoo within ten (10) business days from the date this letter was mailed or personally served to you.

If you do not contact Ms. Yoo in person or in writing within ten (10) business days from the date this letter was mailed or personally served to you, you will have waived your right to respond at this level.

Respectfully,

Anish Mahajan, M.D., Chief Medical Officer
Harbor-UCLA Medical Center

AM:MLAG:sc
NC:CY:js

Enclosures

c:   Karyl Smith, On-site HR Administrator, Harbor-UCLA

Exhibits: A – P

A.   DM&G Sections
B.   Acknowledgement of DM&G
C.   DHS Policy No. 361.8
D.   DHS Policy No. 361.10
E.   DHS Code of Conduct
F.   Civil Service Rule 18.031
F1.  DM&G Section 200