(SPACE BELOW FOR FILING STAMP ONLY)

LINDA MILLER SAVITT, SBN 94164
  lsavitt@brgslaw.com
JOHN J. MANIER, SBN 145701
  jmanier@brgslaw.com
BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 Ventura Boulevard, Eighteenth Floor
Encino, California 91436
T: (818) 508-3700 | F: (818) 506-4827

Attorneys for Defendants BRANT PUTNAM, M.D., JANINE VINTCH, M.D., ANISH MAHAJAN, M.D., CHRISTIAN DE VIRGILIO, M.D., HAL F. YEE, M.D., ROGER LEWIS, M.D., and MITCHELL KATZ, M.D.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TIMOTHY RYAN, M.D., an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>BRANT PUTNAM, M.D., an individual, JANINE VINTCH, M.D., an individual, ANISH MAHAJAN, M.D., an individual, CHRISTIAN DE VIRGILIO, M.D., an individual, HAL F. YEE, M.D., an individual, ROGER LEWIS, M.D., an individual, MITCHELL KATZ, M.D., an individual, and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No. 2:17-cv-05752-R-RAO<br><br>*[Honorable Manuel L. Real]*<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:    December 4, 2017<br>Time:    10:00 a.m.<br>Ctrm:    880<br><br>Action Filed:    August 3, 2017<br>Trial Date:    None Set |

488305.1

1

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................5

II. PLAINTIFF FAILS TO OVERCOME DEFENDANTS' ENTITLEMENT TO QUALIFIED IMMUNITY FROM SUIT UNDER 42 U.S.C. § 1983. ........................5

    A. Plaintiff Tacitly Concedes There Is No "Clearly Established Law" Under Which Defendants' Conduct Constituted an Adverse Employment Action. ...............................................................................5

    B. Plaintiff Identifies No "Clearly Established Law" Making It Apparent That He Spoke on Matters of Public Concern. ........................9

    C. Plaintiff Also Identifies No "Clearly Established Law" That Would Have Made It Apparent That He Spoke as a Private Citizen. ...........................................................................................................11

    D. Judicial Notice of the PSA Bylaws and Suspension Notice is Proper, and These Documents Should Be Deemed Incorporated by Reference ............................................................................................12

    E. There Is No Basis For Granting Leave to Amend. ...............................14

III. CONCLUSION .....................................................................................................15

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011) .................................................................................... 10, 11

*Burlington N. & Santa Fe Ry. v. White*,
    548 U.S. 53 (2006) ............................................................................................. 5

*Coszalter v. City of Salem*,
    320 F.3d 968 (9th Cir. 2003) .......................................................................... 5, 8

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) ........................................................................... 13

*Dahlia v. Rodriguez*,
    735 F.3d 1060 (9th Cir. 2013) ........................................................................... 10

*Dahlia v. Stehr*,
    491 Fed. Appx. 799 (9th Cir. 2012) ............................................................. 6, 8, 9

*Danzig v. Caiafa*,
    No. 2:14-cv-02540-RGK-RZ, Doc. 59 (C.D. Cal. Nov. 18, 2014) ..................... 13

*Davis v. HSBC Bank*,
    691 F.3d 1152 (9th Cir. 2012) ........................................................................... 13

*Demers v. Austin*,
    746 F.3d 402 (9th Cir. 2014) ............................................................................. 12

*Dible v. City of Chandler*,
    515 F.3d 918 (9th Cir. 2008) ............................................................. 6, 10, 11, 12

*Eng v. Cooley*,
    552 F.3d 1062 (9th Cir. 2009) ............................................................................. 5

*Freitag v. Ayers*,
    468 F.3d 528 (9th Cir. 2006) .............................................................. 7, 8, 9, 10

*Hope v. Pelzer*,
    536 U.S. 730 (2002) ....................................................................................... 6, 9

488305.1

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ................................................................................ 14

*Marable v. Nitchman*,
   511 F.3d 924 (9th Cir. 2007) ................................................................................ 10

*Moore v. Kayport Package Express*,
   885 F.2d 531 (9th Cir. 1989) ................................................................................ 15

*Poland v. Chertoff*,
   494 F.3d 1174 (9th Cir. 2007) ................................................................................ 7

*Rhodes v. Sutter Health*,
   No. Civ. 2:12-0013 WBS DAD, 2012 U.S. Dist. Lexis 25638
   (E.D. Cal. Feb. 28, 2012) ..................................................................................... 13

*Sharp v. County of Orange*,
   871 F.3d 901 (9th Cir. 2017) .................................................................... 6, 8, 9, 10

*Thomas v. City of Beaverton*,
   379 F.3d 802 (9th Cir. 2013) ................................................................................ 11

*Ulrich v. City & County of San Francisco*,
   308 F.3d 968 (9th Cir. 2002) .................................................................................. 7

*White v. Pauly*,
   137 S. Ct. 548 (2017) .................................................................................... 6, 8, 9

**Federal Statutes and Rules**

Fed. R. Evid. 201 ........................................................................................................ 14

42 U.S.C. § 1983 .......................................................................................................... 5

**State Statutes**

Cal. Evid. Code § 1157 ................................................................................................ 8

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

## I. INTRODUCTION

In their Motion to Dismiss (Doc. 15), all seven Defendants demonstrated that they are entitled to qualified immunity, and that Plaintiff Timothy Ryan, M.D.'s First Amended Complaint ("FAC") (Doc. 14) fails to state a claim for relief under 42 U.S.C. § 1983. Among other things, Defendants showed that none of them subjected Plaintiff to an adverse employment action, especially not as a matter of "clearly established law" within the particular factual context of this case.

Although Plaintiff maintains in his Opposition (Doc. 16) that he has pled an adverse employment action, he *completely ignores* Defendants' showing that there is *no "clearly established law"* under which any Defendant's conduct would have dissuaded a reasonable physician in Plaintiff's position from exercising his First Amendment rights. Defendants' undisputed showing on this point is a sufficient basis, *in and of itself*, for granting the instant Motion based on qualified immunity.

Plaintiff also fails to identify facts showing that he spoke as a private citizen on matters of public concern under "clearly established law." The FAC should be dismissed, with prejudice.

## II. PLAINTIFF FAILS TO OVERCOME DEFENDANTS' ENTITLEMENT TO QUALIFIED IMMUNITY FROM SUIT UNDER 42 U.S.C. § 1983.

### A. Plaintiff Tacitly Concedes There Is No "Clearly Established Law" Under Which Defendants' Conduct Constituted an Adverse Employment Action.

One of the essential elements of Plaintiff's First Amendment retaliation claim is that each Defendant subjected him to an adverse employment action, *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009), which federal law defines as conduct which would have dissuaded a reasonable person in Plaintiff's position from exercising his First Amendment rights. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (Title VII); *Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003) (§ 1983). Plaintiff's Opposition unsuccessfully challenges Defendants'

showing that no Defendant's alleged actions constituted an adverse employment action. (*Compare* Doc. 15-1 at 16-20 *with* Doc. 16 at 21-24.)[1]

But Defendants' Motion further showed that there is *no "clearly established law"* which would have put Defendants on notice that any their alleged actions constituted an actionable adverse employment action. (Doc. 15-1 at 20-23.) Consequently, all Defendants are entitled to qualified immunity. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Dible v. City of Chandler*, 515 F.3d 918, 930 (9th Cir. 2008).

*Plaintiff completely ignores Defendants' showing on this dispositive point*. His only argument on "clearly established law" pertains to "whistleblowing" in general. (*See* Doc. 16 at 15-18. *But see* pp. 9-11, *infra*.) Plaintiff makes *no attempt* to show there is "clearly established" law under which any Defendant's alleged conduct would have dissuaded a reasonable physician in Plaintiff's position from exercising his free speech rights. (Doc. 16 at 14-24.) *This is a sufficient basis, in and of itself, to grant Defendants' Motion on qualified immunity grounds*. *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *Sharp v. County of Orange*, 871 F.3d 901, 910-11 (9th Cir. 2017); *Dahlia v. Stehr*, 491 Fed. Appx. 799, 801 (9th Cir. 2012) (police chief was entitled to qualified immunity because Ninth Circuit had not previously decided "whether being placed on administrative leave with pay constitutes an adverse employment action," so plaintiff's "purported right protecting him from placement on administrative leave was thus not 'clearly established'").

Plaintiff concedes that the *only* actions the FAC alleges as adverse were: (1) the alleged *votes* by Dr. Putnam, Dr. Vintch, Dr. De Virgilio, Dr. Lewis, and Dr. Mahajan to recommend revocation Plaintiff's Professional Staff Association ("PSA") membership and privileges (even though Dr. Mahajan had no voting rights as an *ex officio* member of the Medical Executive Committee ("MEC")); and (2) Dr.

---

[1] Page citations herein to Plaintiff's Opposition are to the page numbers in the headers automatically generated by the CM/ECF system, not those in the footers.

Yee's and Dr. Katz's supposed *"approval"* of that recommendation. (FAC ¶¶ 10, 12, 31-32, 34-36, 43; Doc. 15-3 §§ 6.2-5, 6.2-7, 6.2-8, 6.2-9, 7.6-4, 11.2-1.2 [PSA Bylaws, attached as Exh. 1 to Defts' Req. for Jud. Notice]; *see* pp. 12-14, *infra* [Plaintiff's objections to judicial notice are without merit].) Plaintiff further confirms ***the recommended revocation has not occurred***, since he exercised his right under the Bylaws to an appeal and hearing. (FAC ¶¶ 34-36.)

None of the authorities cited by Plaintiff even addressed qualified immunity, and none supports his argument that the above votes and "approval" constituted adverse employment actions – much less that this proposition somehow was "clearly established." In *Ulrich v. City & County of San Francisco*, 308 F.3d 968 (9th Cir. 2002), the plaintiff protested layoffs at a public hospital, after which ***the hospital opened an investigation*** of plaintiff's alleged professional incompetence, and later filed a report that made it "virtually impossible for [plaintiff] to obtain employment as a practicing physician at any hospital in the country." *Id*. at 972-74. In *Poland v. Chertoff*, 494 F.3d 1174 (9th Cir. 2007), the plaintiff filed an age discrimination complaint against his direct supervisor, after which ***that same supervisor initiated a retaliatory administrative inquiry*** into plaintiff's performance, based on the supervisor's own allegations regarding the plaintiff's behavior, ultimately resulting in plaintiff's constructive discharge. *Id*. at 1177-78. And in *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006), *cert. denied*, 549 U.S. 1323 (2007), the plaintiff sent memoranda to a warden and associate warden reporting harassment by prison inmates, after which ***those same officials initiated retaliatory internal affairs investigations and later approved plaintiff's suspension and termination***. *Id*. at 533-36, 543.

Here, by comparison, the FAC does not allege that the investigation of Plaintiff was an adverse employment action, or that any of the Defendants initiated or conducted the investigation. Instead, the investigation was compelled by the letter of ***a non-party*** – Rodney White, M.D. – who asked for "corrective action" because

Plaintiff's "collection of information" regarding Dr. White's alleged conduct violated federal and state medical privacy laws. (FAC ¶ 29; *see* Doc. 15-3 § 6.2-5 [investigation conducted by "*ad hoc* committee" appointed by department chair].)[2]

There is no authority at all – and certainly no "clearly established law" – under which the ***post-investigation recommendation votes*** of Dr. Putnam, Dr. Vintch, Dr. De Virgilio, Dr. Lewis, and Dr. Mahajan could constitute an adverse employment action. Nor does Plaintiff explain how Dr. Mahajan could have voted at all when he was not entitled to do so under the PSA Bylaws (Doc. 15-3 § 11.2-1.2), or how Plaintiff ever could know the vote of any other MEC member given that those records and proceedings are ***strictly confidential and immunized from discovery***. *See* Cal. Evid. Code § 1157. At any rate, Plaintiff's failure to demonstrate that the voting MEC members committed adverse employment actions under "clearly established law" entitles these Defendants to qualified immunity. *White*, 137 S. Ct. at 552; *Sharp*, 871 F.3d at 910-11; *Dahlia*, 491 Fed. Appx. at 801.

Plaintiff's arguments on Dr. Yee's and Dr. Katz's supposed "approval" (Doc. 16 at 23) are even less availing. In *Freitag*, the authority on which Plaintiff relies for this assertion, the individuals who "approved" the plaintiff's suspension and termination were the prison warden and associate warden, facts which suggest their approval was ***required or otherwise part of the process*** for implementing the adverse actions. *Freitag*, 468 F.3d at 533-34, 543; *cf. Coszalter*, 320 F.3d at 977 ("severe and sustained campaign of employer retaliation" was an adverse employment action). Here, however, Plaintiff concedes that Dr. Yee and Dr. Katz are not MEC members and had ***no role whatsoever*** in the investigative or

---

[2] Contrary to what the Opposition asserts, paragraphs 6-9 and 11 of the FAC do not allege that "Drs. Putnam, Vintch, Mahajan, De Virgilio, and Lewis all participated in this decision" to investigate Plaintiff, but only that they were on the MEC itself. (FAC ¶¶ 6-9, 11, cited in Doc. 16 at 10.)

disciplinary processes. (FAC ¶¶ 10, 12, 31-32; *accord* Doc. 15-3 §§ 6.2-5, 6.2-7, 6.2-8, 6.2-9, 7.6-4.) Plaintiff's Opposition, like the FAC, alleges *no facts* which would show how any supposed "approv[al]" – or "endors[ment]," "ratifi[cation]," "encourage[ment]," or "permi[ssion]" by Dr. Yee or Dr. Katz could have been accomplished or would have had any impact. (Doc. 16 at 11, 23; FAC ¶¶ 10, 12, 31-32.)

Indeed, it remains a complete mystery *how* Dr. Yee supposedly "endorsed, ratified, encouraged, and approved" any action against Plaintiff, much less how Dr. Yee had "full knowledge" of the allegedly retaliatory motive. (FAC ¶ 31.) The only example offered as to Dr. Katz was that when the "President of the Union of American Physicians" supposedly "confronted" him with the ostensible "fact that the proceeding was retaliatory and should be stopped, Dr. Katz replied that he would 'let nature take its course.'" (FAC ¶ 32.) But Plaintiff does not explain what else was Dr. Katz supposed to say, and ignores the obvious fact that *it would have been highly improper for Dr. Katz to interfere* with an investigation of Plaintiff's potential violations of medical privacy laws.

Plaintiff thus alleges *no facts* which would suggest that Dr. Yee or Dr. Katz engaged in conduct remotely similar to the adverse employment actions taken by the defendants in *Freitag*, 468 F.3d at 533-36, 543. At the very least, there is no clearly established, pre-existing law under which it would have been "apparent" to Dr. Yee or Dr. Katz – or the other Defendants – that their alleged conduct constituted an adverse employment action. *Hope*, 536 U.S. at 739. *As such, all seven Defendants are entitled to qualified immunity*. *White*, 137 S. Ct. at 552; *Sharp*, 871 F.3d at 910-11; *Dahlia*, 491 Fed. Appx. at 801.

### B. Plaintiff Identifies No "Clearly Established Law" Making It Apparent That He Spoke on Matters of Public Concern.

As discussed in Defendants' Motion, Plaintiff has offered no legal support, and certainly no clearly established law, to support the FAC's conclusory description

488305.1

9

of Dr. White's alleged conduct as "fraudulent" and "unlawful." Plaintiff thus offers nothing that would have put any Defendant on reasonable notice that he spoke on matters of "public concern." *Dible*, 515 F.3d at 930.

      Plaintiff's response in his Opposition is to contend that "whistleblowing was clearly established as constitutionally protected speech in 2013." (Doc. 16 at 15, emphasis deleted.) Far from being sufficient, however, this is precisely the type of vague assertion that violates the Supreme Court's repeated warning that courts are not to "define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted); *Sharp*, 871 F.3d at 910-11 (while precedents "establish a general rule that an unreasonable mistake of identity renders an arrest unconstitutional, we cannot simply apply that general rule to the facts of this case").

      Plaintiff still offers ***no legal support*** for his conclusory assertions that Dr. White's alleged conduct was "fraudulent" and "unlawful," and he tacitly concedes that ***none*** of the agencies identified in the FAC (the NIH, the DA, or the state DOJ) found that his allegations established unlawful conduct ***even on their face***. Plaintiff merely relies on authorities which did not address qualified immunity, and which involved "whistleblowing" of clearly-identified unlawful conduct or other matters of public concern. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) ("reporting police abuse and the attempts to suppress its disclosure . . . is quintessentially a matter of public concern"); *Marable v. Nitchman*, 511 F.3d 924, 927 (9th Cir. 2007) (plaintiff complained about "such schemes as claiming inappropriate overtime and using [Washington State Ferries] 'Special Projects' to enable them to supplement their pay inappropriately," which constituted "a waste of public funds and a threat to public safety"); *Freitag*, 468 F.3d at 546 (jailer reported sexual abuse which prison authorities failed to address, thus exposing employer to

liability under Title VII); *Thomas v. City of Beaverton*, 379 F.3d 802, 809 (9th Cir. 2013) (plaintiff refused to go along with racially discriminatory hiring practices of public agency).

None of these cases suggests that a mere "whistleblowing" label will suffice. For purposes of this Motion, the Court need only determine that there is no "clearly established law" under which Plaintiff's alleged speech involved matters of "public concern." Because Plaintiff himself identifies no such established law, Defendants are entitled to qualified immunity on this additional basis. *Ashcroft*, 563 U.S. at 742; *Dible*, 515 F.3d at 930.

### C. Plaintiff Also Identifies No "Clearly Established Law" That Would Have Made It Apparent That He Spoke as a Private Citizen.

Plaintiff argues it is too early to determine whether his alleged speech fell within the scope of his public employment, or whether he spoke as a private citizen. (Doc. 16 at 18.) But Plaintiff overlooks the fact that Defendants raised this issue solely within the context of qualified immunity, and demonstrated the absence of any "clearly established," controlling precedent that *would have put Defendants on notice* that Plaintiff supposedly was speaking as a private citizen.

Plaintiff himself cites no such precedent. He merely relies on *Freitag* for the broad proposition that reporting "misconduct to outside agencies as a whistleblower" falls "outside the scope" of a public employee's job duties. (Doc. 16 at 18.) However, Plaintiff disregards his own FAC's allegations, where the only example of the "kickback" scheme involved an ostensibly unnecessary medical procedure *on one of Plaintiff's own patients* (FAC ¶¶ 16-23), and Plaintiff's internal and external reports alike were motivated by his stated concerns about "patient care" and "endangerment" (*id*. ¶¶ 24-26). As Plaintiff concedes, those matters obviously are central to his public employment as a Staff Vascular Surgeon. (*Id*. ¶ 1.) ***Under the facts alleged in the FAC***, a reasonable person in the position of any of the Defendants would have concluded Plaintiff was speaking pursuant to his

488305.1

11

professional responsibilities as a publicly-employed physician, not as a private citizen. *See Demers v. Austin*, 746 F.3d 402, 417 (9th Cir. 2014); *Dible*, 515 F.3d at 930.

Plaintiff also continues to rely on his ***false assertion*** that the April 4, 2017 Suspension Notice "stated specifically that Dr. Ryan's reporting to outside agencies violated its Discipline Manual and Guidelines because it was outside the scope of his employment duties." (Doc. 16 at 19, emphasis deleted, citing FAC ¶ 37.) In fact, the Suspension Notice itself (Doc. 15-5) (Exhibit 3 to Req. for Jud. Not., Doc. 15-2) ***does not assert*** that Plaintiff went outside his job duties in connection with his ostensible "reporting to outside agencies." Rather, Plaintiff exceeded those duties by his "unauthorized request and review" of protected health information of other doctors' patients whose care predated Plaintiff's employment at Harbor-UCLA, and then by lying about this misconduct. (Doc. 15-5 at 6.) Not surprisingly, Plaintiff does not claim that his violation of patients' medical privacy or his lies about his misconduct constituted constitutionally-protected speech. Similarly, there is no clearly established law that would preclude the Defendants from recommending discipline for his unauthorized request and review of federally protected medical information under HIPAA.

Plaintiff therefore fails to rebut Defendants' showing that there is no clearly established law under which Plaintiff's allegedly-protected speech fell outside his public job duties. This is yet another separate, independent basis for grating Defendants dismissal based on qualified immunity. *Demers*, 746 F.3d at 417; *Dible*, 515 F.3d at 930.

### D. Judicial Notice of the PSA Bylaws and Suspension Notice is Proper, and These Documents Should Be Deemed Incorporated by Reference.

Plaintiff's Opposition, like the FAC, makes factual assertions which refer and rely on both the PSA Bylaws (Doc. 16 at 10-12; FAC ¶¶ 30, 33-34) and the April 4,

2017 Suspension Notice (Doc. 16 at 12, 19; FAC ¶¶ 37, 42). Under well-established Ninth Circuit law, this Court may deem both the Bylaws and the Suspension Notice to be incorporated by reference, even though they are not attached to the FAC. *See, e.g.*, *Davis v. HSBC Bank*, 691 F.3d 1152, 1159-60 (9th Cir. 2012) (citing numerous cases).

Remarkably, Plaintiff opposes Defendants' Request for Judicial Notice of the Bylaws and Suspension Notice, based on his argument that these documents "are not central" or "integral" to Plaintiff's claim. (Doc. 16-1 at 2-3.) Plaintiff's contention is devoid of merit. In one of the cases Plaintiff cites, the Ninth Circuit deemed a billing agreement to be incorporated into an amended complaint which *did not* "explicitly refer" to that document, because it was "integral" to the amended complaint and there was no dispute as to authenticity. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Plaintiff's only other citations are to district court cases which denied judicial notice of documents *not referenced in the pleadings*. *Danzig v. Caiafa*, No. 2:14-cv-02540-RGK-RZ, Doc. 59 at 5-6 (C.D. Cal. Nov. 18, 2014) ("The FAC contains no allegations which refer to any contents of the agreement, nor do any of Plaintiff's claims rely upon the agreement."); *Rhodes v. Sutter Health*, No. Civ. 2:12-0013 WBS DAD, 2012 U.S. Dist. Lexis 25638, at *8-*9 (E.D. Cal. Feb. 28, 2012) (denying judicial notice of private entity's bylaws which were not a public record; no suggestion that bylaws were referenced in complaint).

Plaintiff's FAC relies on its references to the PSA Bylaws to allege that: (1) "the MEC is responsible for, among things, initiating disciplinary actions against medical staff at Harbor-UCLA and, where appropriate, dismissing medical staff and discontinuing medical privileges" (FAC ¶ 30; Doc. 16 at 10); (2) the MEC voted to revoke Plaintiff's PSA membership and privileges "in accordance with Article VI of Harbor-UCLA's Bylaws" (FAC ¶ 33; Doc. 16 at 11); and (3) "Plaintiff thereafter requested a hearing in accordance with Section 7.4-2 of Harbor-UCLA's Bylaws" (FAC ¶ 34; Doc. 16 at 12). The FAC also *falsely characterizes* the Suspension

Notice as stating "Plaintiff's actions violated DHS' [*sic*] Discipline Manual and Guidelines because the actions were outside the scope of Plaintiff's employment duties." (FAC ¶ 37; Doc. 16 at 12. *But see* Doc. 15-5 [the actual Suspension Notice says no such thing].) Plaintiff's FAC and Opposition both explicitly rely on the latter falsehood as the basis for Plaintiff's claim that his speech fell outside his job duties. (FAC ¶ 42; Doc. 16 at 19.)

It is hard to imagine two documents more amenable to "incorporation by reference" than the PSA Bylaws and Suspension Notice. Plaintiff cites no case which suggests such incorporation is unwarranted. It is particularly improper for Plaintiff to misstate the law in order to facilitate his brazen misrepresentation of the Suspension Notice's contents.

In any event, ***Plaintiff does not dispute the authenticity or contents*** of the PSA Bylaws or the Suspension Notice.[3] (*See* Doc. 16-1 at 2-4.) Thus, in addition to the "incorporation by reference" doctrine, judicial notice of these documents and their contents is proper because they are "not subject to reasonable dispute" and are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b), (d); *cf. Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (court may only take judicial notice of existence of another court's opinion, not for the truth thereof).

Even if this Court were to ignore the Bylaws and Suspension Notice, however, Defendants' Motion and the above discussion demonstrate that Defendants are entitled to dismissal based on qualified immunity.

### E. There Is No Basis For Granting Leave to Amend.

Plaintiff already has amended his pleading once, in response to Defendants'

---

[3] Defendants ***have not*** requested judicial notice of the truth of the statements in the Suspension Notice (which Plaintiff presumably disputes), but only of ***the existence of its contents*** (which Plaintiff has falsely characterized but has not disputed).

meet-and-confer overtures regarding a proposed Motion to Dismiss the original Complaint. *See* LR 7-3. While Plaintiff asks the Court to deny the instant Motion to Dismiss, he does not suggest any good-faith amendment could cure the defects discussed in Defendants' Motion or this Reply. Accordingly, this Court should grant Defendants' Motion to Dismiss without leave to amend. *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

### III. CONCLUSION

Defendants again respectfully ask this Court to grant their Motion to Dismiss, without leave to amend.

DATED: November 20, 2017

BALLARD ROSENBERG
GOLPER & SAVITT, LLP

By: _____
John J. Manier
Attorneys for Defendants BRANT PUTNAM, M.D., JANINE VINTCH, M.D., ANISH MAHAJAN, M.D., CHRISTIAN DE VIRGILIO, M.D., HAL F. YEE, M.D., ROGER LEWIS, M.D., and MITCHELL KATZ, M.D.