JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| TIMOTHY RYAN, | ) CASE NO.  CV 17-5752-R |
|---|---|
| Plaintiff, | ) ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| v. | ) |
| BRANT PUTNAM; et al., | ) |
| Defendants. | ) |

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), which was filed on October 27, 2017. (Dkt. No. 15). Having been thoroughly briefed, this Court took the matter under submission on November 30, 2017.

The FAC names the following Defendants, all employees of the County of Los Angeles. Defendants Brandt Putnam, M.D., Janine Vintch, M.D., Christina De Virgilio, M.D., and Roger Lewis, M.D., are members of the Professional Staff Association ("PSA") at Harbor-UCLA Medical Center and the PSA's Medical Executive Committee ("MEC"). Defendant Anish Mahajan, M.D., is a non-voting MEC member. Defendants Hal F. Yee, M.D., and Mitchell Katz, M.D., are the Chief Medical Officer and Director of the County's Department of Health Services. They are not members of the MEC or PSA.

Plaintiff alleges the following. Plaintiff was employed as a vascular surgeon at Harbor-

1  UCLA Medical Center ("the Hospital"), a public hospital, when he discovered a scheme in which
2  surgeons performed medically unnecessary procedures on patients for financial kickbacks from a
3  medical device manufacturer.  Plaintiff alleges that Dr. Rodney White received unlawful
4  kickbacks from the device manufacturer for procedures using the manufacturer's aortic stent
5  grafts.  In 2014, Plaintiff discovered multiple instances of misconduct by Dr. White, including
6  performing a medically unnecessary procedure using a stent graft on one of Plaintiff's patients and
7  falsifying patient case records so that patients would appear eligible for National Institute of
8  Health ("NIH") clinical trials.  Plaintiff reported this scheme to his superiors at the Hospital and to
9  an NIH compliance officer.  On January 12, 2015, Plaintiff reported the scheme to the Los
10 Angeles County District Attorney's Healthcare Fraud Division, which transferred the investigation
11 to the California Department of Justice.  Plaintiff thereafter informed Defendants Putnam, Van
12 Natta, and De Virgilio that he had reported Dr. White's conduct to law enforcement and that a
13 criminal investigation was under way.
14      On August 25, 2015, Dr. White sent Defendant Putnam a letter asking that the Hospital
15 take corrective action against Plaintiff because Plaintiff violated federal and state medical laws,
16 including the Health Insurance Portability and Accountability Act ("HIPAA") and California's
17 Confidentiality of Medical Information Act ("CMIA"), by collecting information about Dr.
18 White's conduct.  Shortly thereafter, the MEC initiated an internal disciplinary procedure against
19 Plaintiff.  Under the PSA Bylaws, the MEC is responsible for initiating disciplinary actions
20 against Hospital medical staff and, where appropriate, dismissing medical staff and discontinuing
21 medical privileges.
22      On October 5, 2016, Defendant Putnam informed Plaintiff via letter that the MEC had
23 voted to revoke Plaintiff's PSA membership and privileges at the Hospital.  Defendants Putnam,
24 Vintch, Mahajan, and Lewis all voted in favor of the revocation.  Defendant Lewis argued that
25 Plaintiff should be punished for reporting Dr. White's alleged conduct.  Defendants Yee and Katz
26 endorsed, ratified, and encouraged the MEC proceeding.
27      Plaintiff exercised his right to request a hearing under the PSA Bylaws.  On November 6,
28 2016, Plaintiff received a Notice of Charges from Defendant Putnam stating that a hearing would

1  be conducted on the MEC's proposed action. On April 4, 2017, Defendant Mahajan informed
2  Plaintiff, via letter, that the County had suspended his employment at the Hospital for 25 days.
3  This letter cited multiple HIPAA and CMIA violations as well as unprofessional behavior towards
4  co-workers as the basis for his suspension.

5  Plaintiff alleges that his First Amendment rights were violated when the MEC voted to
6  suspend Plaintiff's employment at the Hospital. Defendants move to dismiss the FAC on the
7  grounds of qualified immunity and failure to state a claim.

8  "Qualified immunity shields public officials from civil damages for performance of
9  discretionary functions." *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009). Government
10 officials sued in their individual capacities are immune from suit if their conduct "does not violate
11 clearly established statutory or constitutional rights of which a reasonable person should have
12 known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There are two steps to a qualified
13 immunity analysis. First, a court asks whether the official's conduct violated a constitutional
14 right. *Mueller* at 993. Second, a court asks whether that right was clearly established at the time
15 of the alleged conduct. *Id.* A court may proceed directly to the second step of analysis where "a
16 court will rather quickly and easily decide that there was no violation of clearly established law
17 before turning to the more difficult question whether the relevant facts make out a constitutional
18 question at all." *Pearson v. Callahan*, 555 U.S. 233, 239 (2009).

19 The Court will first address whether Plaintiff's right to be free from MEC disciplinary
20 proceedings was clearly established at the time so that Defendants should have known their
21 conduct violated Plaintiff's rights. A right is clearly established if it is "sufficiently clear that
22 every reasonable official would have understood that what he is doing violates that right."
23 *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam). "[E]xisting precedent must have
24 placed the statutory or constitutional question beyond debate. Put simply, qualified immunity
25 protects all but the plainly incompetent or those who knowingly violate the law." *Id*. "The
26 Supreme Court has repeatedly instructed that we examine whether the violative nature of
27 *particular* conduct is clearly established by controlling precedent, not whether the conduct violates
28 a general principle of law." *Sharp v. Cnty. of Orange*, 871 F.3d 901, 910 (9th Cir. 2017).

3

1  The Ninth Circuit applies the following test in First Amendment retaliation cases involving
2  public employees.  Courts ask "(1) whether the plaintiff spoke on a matter of public concern; (2)
3  whether the plaintiff spoke as a private citizen or a public employee; (3) whether the plaintiff's
4  protected speech was a substantial or motivating factor in the adverse employment action; (4)
5  whether the state had an adequate justification for treating the employee differently from other
6  members of the general public; and (5) whether the state would have taken the adverse
7  employment action even absent the protected speech." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067
8  (9th Cir. 2013)
9  Defendants argue it is not "clearly established" that the disciplinary proceedings initiated
10  against Plaintiff constitute an adverse employment action.  To constitute an adverse employment
11  action in a § 1983 case, such as this one, the action must be "reasonably likely to deter employees
12  from engaging in protected activity." *Id.* at 1078.  The Ninth Circuit has consistently held that the
13  initiation of disciplinary proceedings may constitute an adverse employment action, if the
14  proceedings are coupled with additional sanctions.  In *Ulrich v. City and County of San Francisco*,
15  the plaintiff, a doctor, was subject to adverse employment action where the hospital "subjected
16  him to an investigation that threatened to revoke his clinical privileges" and "subsequently refused
17  to rescind his resignation and filed an adverse action report against him, marring his employment
18  record."  308 F.3d 968, 977 (9th Cir. 2002); *see also Dahlia*, 725 F.3d at 1079 (finding an adverse
19  employment action where the plaintiff missed promotional opportunities and suffered enduring
20  stigma as a result of being placed on administrative leave); *Poland v. Chertoff*, 494 F.3d 1174,
21  1180 (9th Cir. 2007) (finding adverse employment action where the plaintiff's employer initiated
22  an administrative inquiry against and transferred him out of state); *Freitag v. Ayers*, 468 F.2d 528,
23  543 (9th Cir. 2006) (finding adverse employment action where the defendants initiated multiple
24  investigations of the plaintiff and also approved the plaintiff's suspension and termination).
25  In this case, Plaintiff contends that each Defendant's role in the MEC proceedings against
26  him constitutes an adverse employment action for the purpose of § 1983, meaning that the conduct
27  would have dissuaded a reasonable physician in Plaintiff's position from exercising his free
28  speech rights.  *See Dahlia*, 735 F.3d at 1078.  Here, the only adverse action taken against Plaintiff

4

was the initiation of disciplinary proceedings against him, which resulted in his temporary suspension from the Hospital.  Plaintiff does not allege any other adverse action that he suffered as a result of Defendants' conduct.  Unlike in *Ulrich*, in which the hospital opened an investigation into the plaintiff's alleged incompetence and later filed a report making it "virtually impossible for [the plaintiff] to obtain employment as a practicing physician at any hospital in the country," in this case, Plaintiff was merely subject to an investigation and temporary suspension of his staff privileges.  *Ulrich*, 308 F.3d at 972.  It is not clearly established law that initiating an investigation and voting to temporarily suspend staff privileges, without additional consequences such as those present in *Ulrich*, constitutes an adverse employment action under § 1983.  Since the right was not clearly established, no Defendant could have known if his actions violated a constitutional right.  Therefore, Defendants are entitled to qualified immunity.

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is GRANTED.  (Dkt. No. 15).

Dated: February 15, 2018.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE