LINDA MILLER SAVITT, SBN 94164
lsavitt@brgslaw.com
JOHN J. MANIER, SBN 145701
jmanier@brgslaw.com
LINDA B. HUREVITZ, SBN 127337
lhurevitz@brgslaw.com
BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 Ventura Boulevard, Eighteenth Floor
Encino, California 91436
T: (818) 508-3700 | F: (818) 506-4827

Attorneys for Defendants BRANT PUTNAM,
M.D., JANINE VINTCH, M.D., ANISH
MAHAJAN, M.D., CHRISTIAN DE VIRGILIO,
M.D., HAL F. YEE, M.D., ROGER LEWIS, M.D.,
and MITCHELL KATZ, M.D.

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| TIMOTHY D. RYAN, M.D., an individual,<br><br>Plaintiff,<br><br>vs.<br><br>BRANT PUTNAM, M.D., an individual, JANINE VINTCH, M.D., an individual, ANISH MAHAJAN, M.D., an individual, CHRISTIAN DE VIRGILIO, M.D., an individual, HAL F. YEE, M.D., an individual, ROGER LEWIS, M.D., an individual, and MITCHELL KATZ, M.D., an individual,<br><br>Defendants. | Case No. 2:17-cv-05752-CAS-RAO<br><br>[*Hon. Christina A. Snyder*]<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS BRANT PUTNAM, M.D. AND JANINE VINTCH, M.D. FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**<br><br>Date:      December 6, 2021<br>Time:     10:00 a.m.<br>Ctrm:     8-D<br><br>Action Filed:   August 3, 2017<br>Trial Date:     April 26, 2022 |

/ / /
/ / /
/ / /
/ / /
/ / /

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

# **TABLE OF CONTENTS**

Page(s)

I.   Introduction. ...................................................................... 8

II.  Plaintiff's § 1983 Claims Against Drs. Vintch and Putnam
     Lack Merit. ...................................................................... 9

     A.   Plaintiff Has No Substantial Evidence that Protected
          Speech Was a Substantial or Motivating Factor in any
          Adverse Action. ......................................................... 9

          1.   There Is No Evidence of Causal Nexus to Protected
               Speech. ............................................................. 9

          2.   Drs. Putnam and Vintch Never Expressed Opposition. ........... 11

          3.   Plaintiff Can't Show Pretext as to Drs. Vintch or
               Putnam. ........................................................... 13

               (a)   No MEC Minutes Were "Altered" for
                     "Concealment." .......................................... 13

               (b)   The FPPE Complied With PSA Bylaws. ..................... 15

               (c)   Defendants Didn't Knowingly Advance a
                     "Scheme" to Retaliate in Violation of the First
                     Amendment. .............................................. 17

               (d)   The FPPE Wasn't Based on False Information............. 18

               (e)   There Are No Shifting or Inconsistent Reasons............ 20

               (f)   The Behavioral Agreement Doesn't Suggest
                     Pretext................................................... 22

     B.   Pickering Balancing Weighs Decisively in Defendants' Favor. ....... 23

     C.   Plaintiff Cannot Overcome the "Same Decision" Defense. .............. 25

1705515.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

**TABLE OF CONTENTS** (continued)

**Page(s)**

III.   Plaintiff Cannot Defeat Qualified Immunity on Summary Judgment. .........25

    A.   No Clearly Established Law on Adverse Employment Action. ...................................................................27

    B.   No Clearly Established Law on Elements of Retaliatory Motive. ...................................................................28

    C.   No Clearly Established Law Favors Plaintiff on Pickering Balancing...................................................................30

IV.   Plaintiff Cannot Recover Punitive Damages From Dr. Putnam. ..................31

V.   Conclusion...................................................................32

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

5
*Brewster v. Board of Educ.*
149 F.3d 971 (9th Cir. 1998) ................................................................ 30

6
*Castro v. County of L.A.*
7
797 F.3d 654 (9th Cir. 2015) ................................................................ 31

8
*Clark Cnty. Sch. Dist. v. Breeden*
9
532 U.S. 268 (2001) ....................................................................... 9, 11

10
*Cornwell v. Electra Cent. Credit Union*
11
439 F.3d 1018 (9th Cir. 2006) ....................................................... 9, 11, 30

12
*Coszalter v. City of Salem*
320 F.3d 968 (9th Cir. 2003) ...................................................... 11, 12, 13
13

14
*Dahlia v. Stehr*
491 F. App'x 799 (9th Cir. 2012) .......................................................... 28
15

16
*Daniels v. School Dist. of Phila.*
776 F.3d 181 (3d Cir. 2015) ............................................................... 22
17

18
*Demers v. Austin*
746 F.3d 402 (9th Cir. 2014) ............................................................... 29
19

20
*Dible v. City of Chandler*
515 F.3d 918 (9th Cir. 2008) ............................................................... 30

21
*Earl v. Nielsen Media Research, Inc.*
22
658 F.3d 1108 (9th Cir. 2011) .............................................................. 13

23
*Eng v. Cooley*
24
552 F.3d 1062 (9th Cir. 2009) ........................................................ 24, 25

25
*Freitag v. Ayers*
468 F.3d 528 (9th Cir. 2006) ............................................................... 29
26

27
*Garcetti v. Ceballos*
547 U.S. 410 (2006) ........................................................ 12, 20, 22, 29

28

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

## <u>TABLE OF AUTHORITIES</u> (continued)

**Page(s)**

*Humann v. City of Edmonds*
    No. C13-101 MJP, 2014 U.S. Dist. Lexis 115806 (W.D. Wash. Aug. 19, 2014) ..................................................................................................... 28

*Ellins v. City of Sierra Madre*
    710 F.3d 1049 (9th Cir. 2013) ............................................... 24, 26, 28

*Independent Towers v. State of Wash.*
    350 F.3d 925 (9th Cir. 2003) ............................................................. 9

*Knickerbocker v. City of Stockton*
    81 F.3d 907 (9th Cir. 1997) ...................................................... 11, 30

*Mount Healthy City School Dist. Bd. of Educ. v. Doyle*
    429 U.S. 274 (1977) .......................................................................... 25

*Ohlson v. Brady*
    9 F.4th 1156 (9th Cir. 2021) .................................................. 22, 24, 29

*Perez v. City of Roseville*
    926 F.3d 511 (9th Cir. 2019) .......................................................... 29

*Pickering v. Board of Educ.*
    391 U.S. 563 (1968) .............................................. 23, 24, 27, 30

*Poland v. Chertoff*
    494 F.3d 1174 (9th Cir. 2007) ....................................................... 28

*Radobenko v. Automated Equip. Corp.*
    520 F.2d 540 (9th Cir. 1975) ......................................................... 13

*Rivas-Villegas v. Cortesluna*
    211 L. Ed. 2d 164 (2021) ......................................................... 27, 28

*Roth v. Veteran's Admin.*
    856 F.2d 1401 (9th Cir. 1988) ....................................................... 29

*Ryan v. Putnam*
    777 F. App'x 245 (9th Cir. 2019) ............................................ 26, 27

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1

## TABLE OF AUTHORITIES (continued)

2

**Page(s)**

3

*Sharp v. County of Orange*
4
   871 F.3d 901 (2017) ...................................................................26, 28

5

*Sjurset v. Button*
6
   810 F.3d 609 (9th Cir. 2015) ...............................................................26

7

*Smith v. Wade*
8
   461 U.S. 30 (1983) ...............................................................................31

9

*Stender v. Lucky Stores, Inc.*
10
   803 F. Supp. 259 (N.D. Cal. 1992).......................................................31

11

*Ulrich v. City & Cnty. of S.F.*
12
   308 F.3d 968 (9th Cir. 2002) ..........................................................27, 28

13

*White v. Pauly*
14
   137 S. Ct. 548 (2017)............................................................................26

15

**STATE CASES**
16

*Bonni v. St. Joseph Health Sys.*
17
   11 Cal. 5th 995 (2021) .........................................................................30

18

19

**FEDERAL STATUTES**
20

42 U.S.C. § 1983.........................................................................8, *passim*
21

22

**STATE STATUTES**
23

Cal. Civ. Code § 47.........................................................................30, 31
24

25

26

27

28

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

# TABLE OF AUTHORITIES (continued)

**Page(s)**

**FEDERAL REGULATIONS AND RULES**

45 C.F.R. § 164.402 ................................................................................................................21

45 C.F.R. § 164.404 ................................................................................................................21

45 C.F.R. § 164.512 ....................................................................................................12, 18, 19

Fed. R. Civ. P. 12 ...................................................................................................................26

Fed. R. Civ. P. 56 ...................................................................................................................26

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

## I.    Introduction.

Defendants Brant Putnam, M.D. and Janine Vintch, M.D. are entitled to summary judgment because neither of them violated Plaintiff Timothy Ryan, M.D.'s First Amendment rights, and both of them are further entitled to qualified immunity. Plaintiff's Opposition (Doc. 62) does not overcome these Defendants' showings.

Plaintiff's claims under 42 U.S.C. § 1983 rest on the premise that the First Amendment protected two of his external reports—to the National Institutes of Health ("NIH") and to the District Attorney's Office ("DAO"). Drs. Putnam and Vintch assumed for purposes of their Motion (Doc. 61) that Plaintiff's report to the DAO was protected, but Plaintiff's Opposition is bereft of evidence of any causal connection between that report and any adverse employment action. Plaintiff strains to show the requisite nexus to his reports to the NIH, but he fails to do so—nor does he establish those reports addressed a public concern.

Plaintiff also has no evidence that Dr. Putnam expressed opposition to protected speech, and tacitly concedes Dr. Vintch did not. Moreover, Plaintiff offers no specific, substantial evidence of pretext. He particularly emphasizes immaterial differences among versions of minutes from two meetings of the Medical Executive Committee ("MEC") of the Professional Staff Association ("PSA"). But one of those documents was explicitly a "DRAFT," the other varied from the official, signed minutes included with the moving papers, and neither meeting featured votes or decisions on materially adverse employment actions.

Drs. Putnam and Vintch also demonstrated adequate justification for the actions attributed to them, and that these actions would have been taken absent any allegedly-protected speech. Plaintiff's Opposition is deficient on these defenses.

Drs. Putnam and Vintch further showed they are entitled to qualified immunity. No clearly established law would have caused them to know the actions attributed to them—all consistent with the PSA Bylaws and recommended by the neutral Ad Hoc committee in its Focused Professional Practice Evaluation ("FPPE")

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1  report—violated the First Amendment. Plaintiff does not even attempt to make such

2  a showing in multiple respects—including whether he spoke as a private citizen,

3  whether timing alone raises an inference of retaliation, or whether his asserted free

4  speech rights outweighed Defendants' interests in maintaining effective and

5  efficient provision of healthcare and protecting employees from a hostile work

6  environment. Plaintiff's arguments on punitive damages also fail.

7  **II.    Plaintiff's § 1983 Claims Against Drs. Vintch and Putnam Lack Merit.**

8      **A.    Plaintiff Has No Substantial Evidence that Protected Speech Was a**

9          **Substantial or Motivating Factor in any Adverse Action.**

10          **1.    There Is No Evidence of Causal Nexus to Protected Speech.**

11      As discussed in the moving papers, Plaintiff's report to the NIH did not

12  address a matter of public concern. (See Doc. 61-1 at 18-19.) The motion also

13  showed that the time gaps between Plaintiff's allegedly-protected speech and

14  allegedly-adverse actions were "too great to support an inference" of causality.

15  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006).

16      *Citing to no authority whatsoever*, Plaintiff argues "the relevant comparison"

17  for establishing causal nexus does not even involve his own speech, but is between

18  *Rodney White, M.D.'s* August 24, 2015 Request for Corrective Action and the

19  MEC's September 28 meeting, and between Dr. White's later Addendum and the

20  MEC's December 28 decision to convene an Ad Hoc Committee to conduct a FPPE

21  to address Dr. White's allegations. (Doc. 62 at 19; Resp. to P's Stmt. of Gen. Disp.

22  of Mat. Fact [etc.] ("RSF") 14-22.) Plaintiff's point lacks legal support and should

23  be disregarded. *See Independent Towers v. State of Wash.*, 350 F.3d 925, 929-30

24  (9th Cir. 2003). In fact, it *contradicts* binding authority and common sense.

25      The Ninth Circuit explicitly requires "a causal link between the protected

26  activity and the adverse employment action." *Cornwell*, 439 F.3d at 1035 (affirming

27  summary judgment based on lack of evidence of employer knowledge and 8-month

28  gap between protected complaint and plaintiff's termination); *see Clark Cnty. Sch.*

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1   *Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) ("cases that accept mere temporal

2   proximity between an employer's knowledge of protected activity and an adverse

3   employment action as sufficient evidence of causality to establish a prima facie case

4   uniformly hold that the temporal proximity must be very close"; citing cases where

5   3-and-4-month periods were held legally insufficient) (cleaned up). *Dr. White's*

6   Request and Addendum are not protected activity *by Plaintiff*, so he cannot use them

7   to manufacture a causal link between protected activity and adverse action.

8         Plaintiff's baseless argument is especially unavailing as to Dr. Vinch,

9   because it is undisputed that she did not attend the December 28, 2015 meeting

10   when the MEC decided to direct the FPPE. (RSF 19-21.) Plaintiff egregiously

11   misleads this Court by claiming that at the September 28 meeting (which Dr. Vinch

12   partially attended), the MEC "acknowledged that they [*sic*] had previously

13   adequately investigated the matter, but agreed to start investigating again." (Doc. 62

14   at 19; *see* RSF 101.) This is frivolously false on two counts. As shown by the

15   "DRAFT" meeting minutes to which Plaintiff cites, *the earlier investigation was not*

16   *by the MEC or PSA*, but by "Performance Management in DHS" (the County's

17   Department of Health Services). (RSF 1, 14-15, 18, 21, 85, 101.) And there is no

18   evidence the MEC "agreed to start investigating again"—or at all—on September

19   28. The non-draft meeting minutes state the PSA *continued* to refrain from

20   reviewing Dr. White's allegations, and instead deferred to other appropriate County

21   bodies. The "DRAFT" minutes do not state otherwise. (RSF 15.) Plaintiff does not

22   explicitly argue any adverse employment action was taken on September 28, so that

23   meeting is immaterial to causal nexus.

24         The only potential adverse action allegedly taken by Dr. Vinch was the

25   proposed revocation of Plaintiff's PSA membership and privileges, which was on

26   October 5, 2016—at least 18 months after Plaintiff's allegedly-protected reports to

27   the DAO and NIH, and only after he refused the Behavioral Agreement. (RSF 30-

28   34, 43; Doc. 14 ¶ 26.) Plaintiff tacitly concedes this time gap is far too long to

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

establish a causal link. *Cornwell*, 439 F.3d at 1035 (8 months was too long); *see Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (reversing summary judgment where time gaps were from 3-8 months).[1] *This is a sufficient basis, by itself, to grant summary judgment for Dr. Vintch.*

Even if Dr. Putnam's participation at the December 28, 2015 meeting were deemed an adverse employment action (*but see* pp. 27-28, *infra*), this was nearly *nine months* after the last of the First Amended protected speech activities alleged by Plaintiff. (RSF 19-21, 43, 53-56, 75-77.) No causal nexus may be inferred solely from such a lengthy gap. *Breeden*, 532 U.S. at 273-74; *Cornwell*, 439 F.3d at 1035.

Moreover, Dr. White's Corrective Action Request *negates causation*, rather than supporting it, because that Request is one of several intervening events (RSF 14-34) that provide "a reasonable basis for inferring that adverse action was not retaliatory." *Knickerbocker v. City of Stockton*, 81 F.3d 907, 912 (9th Cir. 1997) (cleaned up). Plaintiff's attempt to distinguish *Knickerbocker* fails, because the undisputed evidence establishes the MEC was motivated at least in part by Plaintiff's unprotected behavior, and Plaintiff has no other proof to establish retaliatory motive. (*See* Doc. 61-1 at 21-24; pp. 11-23, *infra*.)

**2.    Drs. Putnam and Vintch Never Expressed Opposition.**

Plaintiff fails to support his argument that the record "is replete" with evidence of Defendants' opposition to protected speech. *Plaintiff does not mention Dr. Vintch in this regard*, and again relies on his *false assertions* that the DHS Performance Management investigation in early 2015 was supposedly done by the MEC, and that in September 2015 MEC "reopened" an investigation it never opened to begin with. (*Compare* Doc. 62 at 20 *with* RSF 1, 14-15, 18, 21, 81-82, 85, 101.)

---

[1] The Ninth Circuit has held "the surrounding circumstances" must be considered along with timing. *Coszalter*, 320 F.3d at 978. But Plaintiff fails to establish any surrounding circumstances that bolster his casual nexus argument.

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1   Moreover, Plaintiff offers *no examples* of Drs. Putnam or Vinch opposing his

2   ostensibly-protected reports to the DAO or NIH, which he was required to do to

3   establish retaliatory motive on this basis. *Coszalter*, 320 F.3d at 977.

4       The only statements by Dr. Putnam that Plaintiff cites are references in the

5   Notice of Charges to Plaintiff "openly threatening to call external agencies to

6   conduct investigations" and "openly making unfounded accusations in an angry

7   manner." But as discussed in the moving papers, the Charges against Plaintiff cited

8   the loud and disruptive nature of his threats and other *workplace* conduct, and never

9   mentioned the substance of his non-work reports to the NIH or DAO. (RSF 36, 162;

10  Doc. 61-1 at 25-26.) As Plaintiff concedes (*see* Doc. 62 at 18), internal accusations

11  and threats are not protected by the First Amendment. *Garcetti v. Ceballos*, 547 U.S.

12  410, 421-22 (2006). It follows that criticism of unprotected speech cannot establish

13  retaliatory motive under § 1983. Plaintiff offers no authority to suggest otherwise.

14      Plaintiff quotes a statement in draft MEC minutes—not attributed to any

15  specific person—that "it is not necessarily under the purview of the whistleblower to

16  do their own investigation and start digging into whatever they want." (Doc. 62 at

17  20; RSF 15, 101.) But the draft minutes did not criticize Plaintiff's report to the NIH

18  or even mention his report to the DAO—and Plaintiff's "investigation and …

19  digging" *were not protected speech*. Although Defendants are not burdened with

20  proving Plaintiff violated the Health Insurance Portability and Accountability Act

21  ("HIPAA"), Plaintiff ignores Defendants' showing that HIPAA and its regulations

22  do not authorize *access* to protected health information ("PHI"), even if a later *use*

23  *or disclosure* of PHI is lawful. *See* 45 C.F.R. § 164.512(f), (j). By the same token,

24  *Plaintiff's access of PHI was not speech at all*, even if his subsequent disclosure to

25  NIH was protected. (*But see* Doc. 61-1 at 18-19; p. 29, *infra*.)

26      Plaintiff disingenuously relies on statements by *non-parties to this case*—

27  including Dr. White's Corrective Action Request, which never mentioned Plaintiff's

28  reports to the NIH or DAO, but discussed what Plaintiff describes as "the measures

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1    [he] used" for his NIH report. (Doc. 62 at 20; RSF 97-98.) This is insufficient not

2    only because Plaintiff's "measures" were not protected speech, but also because Dr.

3    White is not a defendant, making his own criticisms insufficient to establish

4    retaliatory motive by Drs. Vintch or Putnam.[2] *See Coszalter*, 320 F.3d at 977.

5        Similarly, Plaintiff's assertion that "the FPPE report … complained about"

6    the report to NIH and "misstated" its outcome actually refers to *non-party witness*

7    *statements to the Ad Hoc Committee* (*see* RSF 131-34), which cannot be used to

8    impute retaliatory motive to Drs. Vintch or Putnam. *Coszalter*, 320 F.3d at 977.[3]

9    The same is true of the FPPE report itself, as no Committee members are parties to

10   this case. (RSF 21.) Moreover, the FPPE report is silent on the NIH report (RSF 24);

11   in fact, Plaintiff invalidly *criticizes* the FPPE report on this basis (RSF 127).

12   Plaintiff's "heads, I win; tails, you lose" approach cannot defeat summary judgment.

13           **3.    Plaintiff Can't Show Pretext as to Drs. Vintch or Putnam.**

14       Plaintiff's lengthy argument on pretext is unavailing. None of his six bases for

15   this contention (Doc. 62 at 21-25) has any merit, and he lacks "specific" or

16   "substantial" evidence of pretext to withstand summary judgment. *See Earl v.*

17   *Nielsen Media Research, Inc.,* 658 F.3d 1108, 1111 (9th Cir. 2011) (cleaned up).

18           **(a)    No MEC Minutes Were "Altered" for "Concealment."**

19       Contrary to Plaintiff's assertions, the MEC did not "alter" minutes at all, let

20   alone "to conceal" supposed "knowledge" of retaliatory motive. (Doc. 62 at 21.) Of

21

22   [2] Plaintiff tries to slip in references to "measures" to give information to the DAO
     (*see* RSF 82, 98), but these must be disregarded because they contradict his
23   deposition testimony that he gathered records specifically for his NIH report.
24   *Radobenko v. Automated Equip. Corp*., 520 F.2d 540, 544 (9th Cir. 1975).

25   [3] The only arguable "criticism" from these non-party witnesses of the NIH report
26   was that at least some of Plaintiff's claims—specifically of research misconduct—
     were rejected by NIH as unfounded, and the "BEST-CLI Trial" at Harbor-UCLA
27   continued after an earlier pause. Contrary to Plaintiff's assertions, these were not
28   misstatements. (RSF 43-45, 130-31; *see* p. 19, *infra*.)

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

the five MEC meetings discussed in the moving papers, Plaintiff claims the minutes from two were "altered"—September 28, 2015 and April 25, 2016. But no adverse actions were allegedly taken at either meeting, and Plaintiff's characterizations of different versions of these minutes are outrageously misleading.

The supposedly-"concealed" version of September 2015 minutes bear the watermark "DRAFT," while the minutes included with the motion do not.[4] (RSF 4, 15, 46, 101, 103, 114, 127.) *All* of the topics Plaintiff depicts as "omitted" from the non-draft September 2015 minutes were discussed in *other MEC documents attached as exhibits to the motion*. In particular, Plaintiff's allegations against Dr. White were discussed in MEC minutes from December 2015, March 2016, and April 2016, and FPPE witness statements; the "acknowledgement" of Dr. White's complaints allegedly being based on data Plaintiff used for his report to the NIH was included in FPPE witness statements; "the prior investigation" by DHS that concluded Plaintiff did not violate HIPPA was discussed in December 2015 and April 2016 MEC minutes; and the concern about perceptions of potential retaliation was stated in the April 2016 minutes and indirectly referenced in the March 2016 minutes. (RSF 103.) This refutes Plaintiff's baseless assertion of concealment.

Even less availing is Plaintiff's claim that the signed version of the April 2016 minutes, included as an exhibit to the motion, was "altered" to *an unsigned version that was excluded from the motion*—rather than the other way around, as one might have inferred from Plaintiff's rantings. (RSF 149.) Plaintiff utterly fails to show any relevance of omissions from unsigned minutes *not* used by Defendants as an exhibit.

---

[4] Neither version is signed, and no signed version has been located. Drs. Vintch and Putnam both explained the routine problems regarding record-keeping of MEC minutes in their respective depositions, which arose in part from turnover in the Medical Staff Office (the presumptive custodian of such records) and issues with secretarial support. (*See* RSF 105-106, 108-114, 149-151.)

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1       In particular, while the unsigned April 2016 minutes do not refer to the

2 MEC's actions "compromising" the County (which is not even a party to this case)

3 or to a statement attributed to Hal Yee, M.D. that the MEC "proceed with caution

4 because of the perception of whistleblowing," they do express "concerns" noted

5 during a meeting with Dr. Yee that any PSA action against Plaintiff "might be seen

6 as potential retaliation for whistleblowing." (RSF 149.) Both versions of the April

7 2016 minutes include routine litigation warnings, and are hardly surprising given

8 that Plaintiff already was suing the County. (*Id.*)

9       Plaintiff also claims the signed minutes include a so-called "admission" that

10 the prior investigation (by DHS, *not* the MEC) cleared Plaintiff of obtaining PHI,

11 while the unsigned minutes instead state that he *did* improperly access PHI. (RSF

12 149.) Aside from the obvious fact that Defendants' use of the signed minutes with

13 the "admission" refutes his premise of "concealment," Plaintiff glosses over the

14 undisputed fact that *there were two different DHS investigations*. (*Id.*) The "initial"

15 one found no HIPAA violation, but was based on the faulty premise that Plaintiff's

16 activities were "research connected," when in fact he "was not authorized to conduct

17 research"—and he now concedes he was only searching for information to provide

18 to the NIH or DAO, as opposed to medical research. (*Id.*)

19       Plaintiff also cites the inclusion in the unsigned minutes of language about the

20 FPPE. (RSF 149.) But while the signed minutes omit that acronym, they do refer to

21 the disruptive behavior raised in the FPPE report—including Plaintiff yelling at

22 nurses and providers affected by his actions ending up leaving Harbor-UCLA. (*Id.*)

23 None of Plaintiff's arguments regarding versions of MEC minutes supports his

24 contention that the stated reasons for the MEC actions were pretextual.

25       **(b)**      **The FPPE Complied With PSA Bylaws.**

26       Drs. Putnam and Vinch did not "abandon the PSA's normal approach to

27 physician discipline" in Plaintiff's case. (Doc. 62 at 21-22.) As stated above, Dr.

28 Vinch was absent from the MEC meeting where the FPPE was directed. (RSF 19-

BALLARD ROSENBERG GOLPER & SAVITT, LLP

15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR

ENCINO, CALIFORNIA 91436

21.) Plaintiff also ignores the provision in the PSA Bylaws that "collegial intervention efforts are encouraged but are not mandatory, and shall be within the discretion" of appropriate PSA and Harbor-UCLA management. (RSF 4, 46, 138.)

Plaintiff downplays the FPPE report as merely accusing him of "yelling" and unspecified other "unprofessional behavior," which he portrays as invariably being handled by counseling and consulting the physician's supervisor before resorting to an FPPE. (RSF 136-137.) But the FPPE report went much farther than that, and made the following specific findings on Plaintiff's disruptive conduct:

● Plaintiff "acted aggressively" and was "verbally abusive to other practitioners, nurses, fellows, and in some instances, patients"; he created "a hostile work environment" where some people "felt threatened" and "intimidated" to the point where they desired to leave "the vascular work team" or their jobs; and he publicly criticized "the patient management of other members of the team," which adversely affected well-being of other healthcare officials;

● "at least one key physician confirmed" he left Harbor-UCLA due to Plaintiff's behavior, which could have adversely impacted the vascular program's "future educational development";

● several fellows reported Plaintiff intimidated and yelled at them, making it "hard to recommend Harbor to future fellows" due to this environment, and they did not trust Plaintiff or want to ask him for recommendation letters; and

● despite Plaintiff's technical expertise, his behavior adversely impacted patient care, because he yelled at several fellows in front of patients, he contributed to poor communications with other vascular attending physicians, separate operating room suites had to be run to give Plaintiff his own operative area, and the impending loss of experienced faculty "may also impair patient care." (RSF 24, 34.)

In deposition, Dr. Putnam testified that "usually there's no FPPE" for one or two instances of a physician yelling or screaming in the operating room—which is all that Plaintiff claims to have witnessed from other identified doctors—but that

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1   PSA proceedings may be warranted for "a pattern of behavior from multiple staff in

2   multiple areas that is concerning and potentially disruptive to the care of patients."

3   (RSF 4, 46, 136, 141-42.) Aside from the fact that Plaintiff has never sat on an MEC

4   and lacks personal knowledge about what "usually happens," there is no evidentiary

5   support for Plaintiff's contention that he was disciplined for conduct for which

6   others were not disciplined.

7             (c)     **Defendants Didn't Knowingly Advance a "Scheme" to**

8                     **Retaliate in Violation of the First Amendment.**

9        Plaintiff lacks evidence that Drs. Putnam and Vintch "knew … they were

10  advancing Dr. White's retaliatory scheme." (Doc. 62 at 22-23.) Plaintiff again

11  ignores Dr. Vintch's absence from the MEC meeting when the FPPE was directed

12  (RSF 19-21), and again relies on the *demonstrably false assertion* that the MEC led

13  an earlier investigation actually conducted by DHS Performance Management. (RSF

14  1, 14-15, 18, 21, 79-85, 101.) Plaintiff completely fails to explain how Drs. Putnam

15  or Vintch could have "known" of *retaliatory motive based on First Amendment-*

16  *protected speech* from opaque references to "ongoing issues" between Plaintiff and

17  Dr. White, "historical interactions that may never be fully understood," and Drs.

18  Vintch and Putnam seeking out Timothy Van Natta, M.D. (then Chief Medical

19  Officer of Harbor-UCLA) in November 2015 to discuss Plaintiff "and his current

20  activities at Harbor." (RSF 50, 94, 96-100, 115.)[5]

21       Plaintiff mischaracterizes Dr. White's Corrective Action Request and

22  Addendum as "expressly retaliatory," when in reality neither document expressly *or*

23  implicitly references Plaintiff's reports to the DAO or NIH. (*See* RSF 14-17.)

24  Indeed, Plaintiff offers *no evidence* that Drs. Vintch or Putnam specifically knew of

25

26  ───────────────

[5] Plaintiff does not provide evidence of the meeting with Dr. Van Natta. (*See* RSF

27  115 (citing to an earlier email string); Doc. 62 at 22-23, mistakenly citing to RSF

28  105 (addressing an entirely different topic).)

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1   his ostensibly-protected reports to the DAO, or that they knowingly retaliated

2   against Plaintiff based on any protected reports. (RSF 53-56, 75-77, 82-84, 98, 101.)

3          The mendacity of Plaintiff's attempt to concoct triable issues is illustrated by

4   his protest that Dr. Putnam "updated Dr. White" on the FPPE regarding Plaintiff, but

5   "never updated" Plaintiff on the earlier FPPE on Dr. White. Dr. Putnam was not

6   PSA President or MEC Chair until July 1, 2015—*months after* the FPPE on Dr.

7   White was completed—so he was in no position to update Plaintiff. (RSF 6, 13, 72.)

8   Moreover, Dr. Putnam only informed Dr. White that an FPPE had been directed as

9   to Plaintiff—information that Plaintiff admittedly had regarding the FPPE on Dr.

10   White. (RSF 13, 119.)

11                    **(d)    The FPPE Wasn't Based on False Information.**

12          There is no evidence that Drs. Putnam and Vinch "pursued the investigation"

13   of Plaintiff "in the face of information they knew to be false." (Doc. 62 at 23-24.)

14   To repeat, Dr. Vinch was absent when the MEC directed the FPPE. (RSF 19-21.)

15   Plaintiff's phrase "in the face" is noteworthy for its murkiness, because he tacitly

16   concedes the FPPE report was *not based* on any information Plaintiff alleges to be

17   false—much less on information Drs. Putnam or Vinch "knew" to be false.

18          According to Plaintiff, Dr. White submitted "a clearly fabricated report" to

19   DHS in which he contended Plaintiff "had requested in the course of his NIH report,

20   but which was dated after Dr. White's complaint." (Doc. 62 at 23.) But Plaintiff fails

21   to show Dr. White fabricated his DHS report—*and he offers no evidence that Drs.*

22   *Putnam or Vinch saw or knew of that report*, much less any fabrication. (RSF 84.)

23          Plaintiff also faults the FPPE report for not mentioning that his access of PHI

24   was for the purpose of obtaining "records to provide to the NIH." But as previously

25   discussed, this is not a legally valid defense under HIPAA regulations, *see* 45 C.F.R.

26   § 164.512(f), (j), and accessing PHI is not protected speech. In any event, FPPE

27   witness statements and draft MEC minutes discussed Plaintiff's stated purpose for

28   his unlawful access of PHI. (RSF 127.) The FPPE report's omission of Plaintiff's

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1   assertion does not remotely suggest pretextual motive by Drs. Vintch or Putnam.

2        Plaintiff wrongly asserts that the FPPE report "complained that Drs. White
3   and Donayre were leaving Harbor because of Dr. White [*sic*]." In fact, the report
4   cited Carlos Donayre, M.D.'s own confirmation he was leaving due to Plaintiff's
5   behavior, and did not claim Dr. White had left at all—indeed, Dr. White only retired
6   *two months after* the FPPE report was issued. (RSF 11, 24, 128.) Plaintiff faults the
7   FPPE for not crediting his NIH reports for resulting in Drs. White and Donayre's
8   disqualification from the BEST-CLI trial, but that disqualification only pertained to
9   endovascular procedures, not "open" procedures. (RSF 128.) In any event, Plaintiff
10  does not assert that these doctors left Harbor-UCLA for this reason (*id.*), so it
11  remains a mystery why he contends the FPPE report should have mentioned the
12  partial disqualifications at all, and the omission raises no inference of pretext.

13       Plaintiff next faults the FPPE for supplying "false" witness statements from
14  Drs. White and Donayre "suggesting" Plaintiff made false reports to the NIH. But
15  Plaintiff fails to identify any false witness statements, and instead cites to *accurate*
16  statements that Drs. White and Donayre were "cleared of allegations" of research
17  misconduct and that Harbor-UCLA was allowed to resume the BEST-CLI Trial.
18  (RSF 43-45, 130-31, 134.)

19       Plaintiff distorts the evidence by claiming Dr. Putnam "investigated"
20  Christian de Virgilio, M.D.'s "false claims" about Plaintiff having a felony
21  conviction (which he insists was a misdemeanor) but still "allowed" Dr. de Virgilio
22  "to make the claims" in MEC minutes "without correction." Dr. Putnam's
23  "investigation" consisted of a single October 16, 2015 email reporting that Dr. de
24  Virgilio had asked about a question on Plaintiff's "PSA re-credentialing
25  application," stating that Plaintiff "evidently … noted that he had been convicted of
26  a felony," and asking follow-up questions. In approving Plaintiff's application, Dr.
27  de Virgilio noted Plaintiff's criminal conviction but did not refer to a felony. (RSF
28  158.) Minutes of a March 2016 MEC meeting—which Dr. Putnam signed on April

25, 2016, more than six months after the email—state that Dr. de Virgilio referred to a "felony" conviction but *minimized* any importance of Plaintiff's criminal record:

> Dr. DeVirgilio relayed to the MEC that Dr. Ryan was accusing Dr. White of plagiarism in his research studies. The MEC asked whether there had been any indication of such unprofessional behavior by Dr. Ryan prior to him coming to Harbor. Dr. DeVirgilio had reviewed Dr. Ryan's credentials file and found only that Dr. Ryan had previously been charged with felony destruction of property, to which he pled "no contest".

(RSF 160.) It is patently ludicrous for Plaintiff to fault Dr. Putnam, and infer pretext, for not "correcting" these minutes based on a single email from six months earlier.

Plaintiff goes so far as to fault Drs. Putnam and Vintch for their inability to recall during deposition testimony—given nearly five years after the Notice of Charges—what those Charges referred to by stating Plaintiff "openly [made] unfounded accusations in an angry manner." (RSF 36, 162-63, 168.) But Plaintiff disingenuously conflates his report to NIH—which he claims caused the (partial) disqualification of Drs. White and Donayre from the BEST-CLI Trial, and were allegedly protected by the First Amendment—with his internal workplace threats and accusations, which were the sole focus of the quoted language in the Notice of Charges and were *not protected* by the First Amendment. *Garcetti*, 547 U.S. at 421-22. Plaintiff does not even purport to show that Drs. Putnam or Vintch somehow knew the Notice of Charges contained allegedly false information.

### (e)    There Are No Shifting or Inconsistent Reasons.

Plaintiff fails to establish "shifting and inconsistent" reasons for what he describes as "Defendants' justifications for pursing [*sic*] Dr. Ryan." (Doc. 62 at 24.) Instead, the undisputed evidence shows that Dr. White (not a Defendant) initially focused on Plaintiff's unauthorized search for PHI, but also broadly described Plaintiff's conduct as "detrimental to the delivery of quality patient care, disruptive

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

and deleterious to the operations of the Medical Center, … and below applicable professional standards." (RSF 14-16.) Contrary to Plaintiff's repeated false assertions, the MEC did not direct an "investigation" of him in September 2015 or earlier that year. (RSF 101.) Instead, in December 2015, the MEC (excluding Dr. Vintch) cited the "undue and unnecessary friction within the department" as one basis for directing an FPPE. (RSF 19-21, 120.) Witnesses interviewed by the Ad Hoc Committee presented evidence of Plaintiff's disruptive workplace behavior, which was detailed in the FPPE report and witness statements. (RSF 24, 34.) Plaintiff argues that Dr. de Virgilio did not know how the Committee was instructed or approached its work—but Dr. de Virgilio was himself a witness, so it was proper for him to *abstain* from directing the Committee on its work. (RSF 122-24.)

Plaintiff even complains that the MEC's eventual recommendation to revoke his PSA privileges and membership was *not* based on HIPAA violations and that he evidently was not "reported" for such violations.[6] (RSF 34-36, 148, 161-62, 173.) But this is consistent with Plaintiff's own exhibits which reflect the MEC's long-standing deference to the County's HIPAA Compliance Office on HIPAA issues. (*See* RSF 14-15, 21, 99, 101, 148-49.) *It further refutes Plaintiff's contention that he was subjected to an adverse employment action based on "the measures [he] used" for his NIH report* (RSF 97-98, italics added)—and there is no evidence of retaliation based on *the report itself*, which is what Plaintiff must show under § 1983.

---

[6] Although the MEC may have initially assumed a report was required, it is hardly clear that this is true for every unauthorized access of PHI. HIPAA's Breach Notification Rule applies where the access, use, or disclosure of PHI compromises the PHI's security or privacy. *See* 45 C.F.R. §§ 164.402, 164.404(a)(1). Plaintiff had no legally-valid defense to his unauthorized *access* of PHI, but any *disclosure* to the NIH was protected and presumably would not have been deemed to have compromised security or privacy. Nor has Plaintiff allegedly engaged in any other unprotected use or disclosure of PHI after his unlawful access.

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1    Defendants have been consistent in the reasons the MEC directed the FPPE

2    and ultimately recommended the revocation of Plaintiff's PSA membership and

3    privileges. There is no evidence of shifting or contradictory reasons from which to

4    infer pretextual motives for these actions.

5                  **(f)    The Behavioral Agreement Doesn't Suggest Pretext.**

6          Finally, Plaintiff purports to dispute that the MEC had good-faith reasons to

7    offer the Behavioral Agreement and that it hoped he would accept it. (Doc. 62 at 24-

8    25.) But as discussed in the moving papers (Doc. 61-1 at 22-24; RSF 32), Plaintiff's

9    *post hoc* objections to that Agreement do not establish pretextual motive.

10         Plaintiff denies committing the wrongdoing stated in the Agreement's

11   recitals. (RSF 32-33, 154.) But the FPPE report reasonably concluded otherwise

12   (RSF 24, 34), and claiming "I didn't do it" is legally insufficient to establish pretext.

13   *See Daniels v. School Dist. of Phila.*, 776 F.3d 181, 200 (3d Cir. 2015) (Title VII

14   retaliation plaintiff "cannot simply show that the employer's decision was wrong or

15   mistaken" to establish pretext; summary judgment affirmed) (cleaned up).

16         Plaintiff ignores Defendants' refutation of his contention that the Agreement

17   provision requiring him to address concerns regarding individuals at Harbor-UCLA

18   "within Harbor channels" would have prevented "the very reports to outside

19   authorities" Plaintiff made. (RSF 171.) As Plaintiff tacitly concedes, these

20   provisions only regulated speech pursuant to his job duties at Harbor-UCLA (RSF

21   32)—which the First Amendment does not shield from discipline and are a subject

22   of legitimate administrative interest. *Garcetti*, 547 U.S. at 425-26; *Ohlson v. Brady*,

23   9 F.4th 1156, 1163 (9th Cir. 2021). Even if Plaintiff's lawyers had perceived any

24   ambiguity on this issue, they made no attempt to address it (RSF 33)—nor does

25   Plaintiff articulate how this possibly could constitute specific, substantial evidence

26   of pretext.

27         Plaintiff tacitly concedes Defendants' showing that the Agreement's waiver

28   of liability pertained only to "claims resulting" from actions or communications

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1  "consistent with the terms of this Agreement" or "the subject matter" of the Anger

2  Management Program—and did not bar recourse for intentionally wrongful conduct

3  like Plaintiff alleges in his various lawsuits. (RSF 32, 172.) Instead, Plaintiff now

4  complains that one other doctor's Behavioral Agreement did not include a similar

5  waiver provision, and Drs. Vintch and Putnam could not recall (off the top of their

6  heads in depositions) other Agreements that did. (RSF 156-57.) But Plaintiff fails to

7  explain how this alleged distinction would be material, given the narrow scope of

8  the waiver clauses in the Agreement he was offered. (RSF 32, 172.)

9        Plaintiff blatantly misleads this Court by asserting that the MEC, and Drs.

10  Vintch and Putnam, "did not expect" Plaintiff to accept the Agreement "and refused

11  to make any changes" based on Plaintiff's "objections." (RSF 33, 153.) As

12  Plaintiff's own exhibits establish, Defendants' expectation that Plaintiff would reject

13  the Agreement came only *after* the original deadline for acceptance already had

14  expired and Plaintiff's new counsel requested more time "to review" the Agreement

15  "*and try to talk Dr. Ryan down* (*he is very angry*)." (RSF 153, italics added.)

16  Plaintiff offers no evidence that he or his counsel (old or new) made "objections" or

17  proposed "changes" to the Agreement. Dr. Putnam only opposed any changes *after*

18  he reluctantly agreed to new counsel's extension request. (RSF 33, 153.)

19        Plaintiff tacitly concedes Defendants' point that requiring the Behavioral

20  Agreement was not an adverse employment action, as it would not have triggered

21  any adverse report. (RSF 32.) He entirely fails to show any pretextual motive for the

22  Agreement, let alone the decision to recommend revocation of Plaintiff's clinical

23  privileges after he rejected the Agreement. Summary judgment is plainly warranted.

**B.    *Pickering* Balancing Weighs Decisively in Defendants' Favor.**

25        Plaintiff contends the "same facts" he cites in his arguments on motive also

26  create triable issues on whether Drs. Vintch and Putnam acted with adequate

27  justification. (Doc. 62 at 25-26.) Not so. Under the applicable balancing test, *even if*

28  Plaintiff could establish retaliatory motive under the First Amendment (he cannot),

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1  summary judgment remains appropriate if Drs. Vintch and Putnam establish they

2  were adequately justified in treating Plaintiff differently from others in the general

3  public. *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968). Plaintiff argues these

4  are pure factual questions, but this principle actually was articulated as to the same-

5  decision defense. *Eng v. Cooley*, 552 F.3d 1062, 1072 (9th Cir. 2009), *cert. denied*,

6  558 U.S. 1110 (2010), *cited in Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064

7  (9th Cir. 2013). By comparison, "the *Pickering* balancing inquiry is ultimately a

8  legal question," and summary judgment is appropriate absent "underlying factual

9  disputes." *Eng*, 552 F.3d at 1071, *quoted in Ohlson*, 9 F.4th at 1162-63.

10      Plaintiff again seizes on the Notice of Charges reference to Plaintiff "openly

11  threatening to call external agencies to conduct investigations"—but not the

12  substance of his actual reports outside of work—among Plaintiff's many

13  "inappropriate behaviors." (RSF 36, 162, 165.) The FPPE report specifically found

14  Plaintiff's loud and disruptive behavior adversely impacted the work environment

15  and patient care at Harbor-UCLA. (RSF 24, 34, 36.) As discussed in the moving

16  papers, the Behavioral Agreement and the subsequent proposal to revoke Plaintiff's

17  medical staff privileges were reasonably calculated to promote the efficiency and

18  effectiveness of the provision of healthcare services to Harbor-UCLA patients.

19  *Pickering*, 391 U.S. at 568; *Ohlson*, 9 F.4th at 1163.

20      Plaintiff ignores Defendants' showing that these interests clearly outweigh his

21  asserted free speech interests. He has *never* articulated specific facts that would

22  demonstrate Dr. White or others actually committed unlawful conduct, or that any

23  civil or criminal charges have been brought in the last seven-plus years. (*See* Doc.

24  14 ¶¶ 24-28.) A plaintiff's good-faith belief is essential to establishing that reports

25  of allegedly illegal conduct were protected by the First Amendment, but no case

26  holds such mere belief is sufficient by itself to create a triable issue on *Pickering*

27  balancing—especially given the undisputed evidence of the MEC's interests in

28  maintaining effective and efficient provision of healthcare and a work environment

1   free from hostility. This is yet another basis which compels summary judgment.

2         **C.**      **Plaintiff Cannot Overcome the "Same Decision" Defense.**

3          Defendants' motion also showed the MEC would have directed the FPPE and

4   recommended revoking Plaintiff's clinical privileges upon his rejection of the

5   Behavioral Agreement (RSF 14-36) regardless of whether or not Plaintiff engaged

6   in protected speech. *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429

7   U.S. 274, 286 (1977). This is another issue on which summary judgment is

8   appropriate absent any material factual dispute. *See Eng*, 552 F.3d at 1072.

9          Plaintiff explicitly relies on the "same facts" he cites in his arguments on

10  motive to rebut the "same decision" defense. (Doc. 62 at 25-26.) But the foregoing

11  discussion (pp. 9-23) refutes each of Plaintiff's points. Dr. White didn't demand that

12  Plaintiff be punished "for his report to the NIH" (RSF 14-16, 96-98), Dr. Vintch

13  didn't attend the MEC meeting where the MEC was directed (RSF 19-21), neither

14  she nor Dr. Putnam "knew" that anything in the FPPE report was "untrue" and

15  neither "acted based on" alleged falsities (RSF 11, 24, 36, 43-46, 127-28, 130-31,

16  134, 158, 160, 162-63, 168), the FPPE complied with PSA Bylaws which did not

17  require futile counseling of Plaintiff (RSF 4, 24, 34, 46, 136-38, 141-42),

18  Defendants' failure to recall whether or not other Behavioral Agreements included

19  similar waiver clauses does not suggest intent to retaliate based on First Amendment

20  protected speech (RSF 32, 156-57, 172), the concerns about a potential perception

21  of retaliation are routine, especially since Plaintiff was already an active litigant

22  (RSF 103, 148-49), and *nobody*—let alone Drs. Putnam or Vintch—"scrubbed …

23  damaging admissions from the minutes" (RSF 101-104). The absence of factual

24  disputes further compels summary judgment on the "same decision" defense.

25  **III.**     **Plaintiff Cannot Defeat Qualified Immunity on Summary Judgment.**

26         Plaintiff's primary argument against qualified immunity is that the Ninth

27  Circuit reversed the grant of Defendants' motion to dismiss on this basis, and that

28  "nothing material has changed." (Doc. 62 at 26.) But Plaintiff obscures the fact that

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

the Ninth Circuit only reviewed this issue "at the pleading stage" under Fed. R. Civ. P. 12(b)(6). *Ryan v. Putnam*, 777 F. App'x 245, 246 (9th Cir. 2019). This is summary judgment, which is based on evidence, so it will not do for Plaintiff to rest on his pleadings, or merely invoke the Ninth Circuit decision and the name of the late District Judge who granted the motion to dismiss. *See* Fed. R. Civ. P. 56(c).[7]

Plaintiff contends his "right to be free of retaliation for his protected speech was well-established." (Doc. 62 at 29.) But this is precisely the "high level of generality" that represents an *inappropriate* definition of "clearly established law" under binding precedent. *Sjurset v. Button*, 810 F.3d 609, 615-16 (9th Cir. 2015) (cleaned up). Instead, "the clearly established law must be particularized to the facts of the case," to avoid distorting qualified immunity "into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S. Ct. 548, 552 (2017).

Relying on a case decided four years before *White v. Pauly*, Plaintiff suggests "an earlier case" need not "mirror the specific facts here," but that the law need only give public officials "fair warning that their conduct is unconstitutional." *Ellins*, 710 F.3d at 1064. But the Ninth Circuit later quoted *White* in holding that except in "rare" cases of "obvious" constitutional misconduct, a plaintiff must "identify a case" where a public official "acting under similar circumstances" as defendants "was held to have violated" the Constitution—*i.e.*, plaintiff "must point to prior case law that articulates a constitutional rule specific enough to alert these [officials] *in this case* that *their particular conduct* was unlawful." *Sharp v. County of Orange*, 871 F.3d 901, 911 (2017) (italics in original) (cleaned up). And the Supreme Court

---

[7] Plaintiff went so far as to oppose Defendants' request for judicial notice of the PSA Bylaws and DHS's Notice of Intent to Suspend. (*See* Doc. 15-2, 16-1.) Neither the District Court nor the Ninth Circuit ruled on this opposition (*see* Doc. 22), but it reflects Plaintiff's zeal to ensure the Rule 12(b)(6) motion was limited to the four corners of his pleading. This, of course, is not the Rule 56 standard.

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1  has held that "materially distinguishable" cases cannot qualify under this standard.

2  *Rivas-Villegas v. Cortesluna*, 211 L. Ed. 2d 164, 169 (2021) (*per curiam*).

3       Plaintiff farcically portrays Defendants' motion as spinning "an extended

4  discussion of whether Defendants were aware they were violating each and every

5  element of Section 1983 based on specific precedent regarding each element," and

6  declares this "the wrong inquiry." In fact, Drs. Putnam and Vintch cited numerous

7  applicable cases holding qualified immunity is appropriate where no clearly

8  established law exists in connection with specific elements of the legal standard—

9  including whether the plaintiff spoke as a private citizen or on an issue of public

10 concern, or was subjected to an adverse employment action; whether any "temporal

11 nexus" existed between protected speech and the adverse action; and whether

12 *Pickering* balancing favors the plaintiff's claim. (*See* Doc. 61-1 at 29-30 & nn.3-6.)

13     **A.    No Clearly Established Law on Adverse Employment Action.**

14     Plaintiff relies on the Ninth Circuit's holding in the prior appeal (quoted at

15 Doc. 61-1 at 31) that clearly-established law provides it is an adverse employment

16 action for an employer "to initiate disciplinary proceedings against a doctor that

17 threaten to revoke staff privileges, *when combined with a negative effect on*

18 *employment prospects*," in retaliation for protected speech. *Ryan*, 777 F. App'x at

19 246 (italics added), *quoting Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 977 (9th

20 Cir. 2002). But that is how the Ninth Circuit construed *Plaintiff's pleadings*. It is not

21 what the undisputed evidence shows on summary judgment.

22     Plaintiff emphasizes Dr. Putnam's position as PSA President and Dr. Vintch's

23 as Vice-President, and infers that they "led" the MEC's actions. (RSF 6-7.) But no

24 such inference applies to Dr. Vintch for the meeting at which the FPPE was directed

25 (RSF 14-21), even if it applies to Drs. Vintch and Putnam for the meeting where the

26 MEC voted to propose a Behavioral Agreement and recommend revoking Plaintiff's

27 clinical privileges if he refused it. (RSF 22-34.) Moreover, Plaintiff offers no clearly

28 established law—or authority of any kind—holding that "leading" such meetings

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

*plus* any votes taken on the FPPE, Behavioral Agreement, or privilege revocation constitute adverse employment actions. (Doc. 62 at 28.)

Plaintiff relies on materially distinguishable precedents which involved *individuals who acted unilaterally*. *See Ulrich*, 308 F.3d at 972-74 (medical director refused to accept employee's rescission of resignation, and filed adverse reports with Medical Board and NPDB); *Poland v. Chertoff*, 494 F.3d 1174, 1177-78 (9th Cir. 2007) (supervisor initiated a retaliatory administrative inquiry into plaintiff's performance, resulting in negative findings and transfer). Plaintiff also invokes the general principle that "the type of sanction ... need not be particularly great in order to find that rights have been violated," *Ellins*, 710 F.3d at 1065, but that case rested on precedent that salary deprivation "is unconstitutional if levied in retaliation for protected speech," *id*., which has no application to this case.

The Ninth Circuit may well have read Plaintiff's *pleadings* as alleging that at least one Defendant took unilateral actions of the kind depicted in *Ulrich*. But as Plaintiff tacitly concedes, there is no *evidence* of this. (RSF 14-34.) Because *Ulrich* and *Poland* are readily distinguishable on this material point, they do not constitute clearly established law on the "adverse employment action" requirement. *Rivas-Villegas*, 211 L. Ed. 2d at 169; *Sharp*, 871 F.3d at 911. *This is a sufficient basis, by itself, to grant the instant motion based on qualified immunity*. *See Dahlia v. Stehr*, 491 F. App'x 799, 801 (9th Cir. 2012) (granting qualified immunity absent binding precedent on whether being placed on leave with pay "constitutes an adverse employment action"); *Humann v. City of Edmonds*, No. C13-101 MJP, 2014 U.S. Dist. Lexis 115806, at *15 (W.D. Wash. Aug. 19, 2014) (same result where claim was based on reappointment and layoff where funding for position was eliminated).

**B.    No Clearly Established Law on Elements of Retaliatory Motive.**

As discussed in Defendant's motion, Plaintiff's own insistence that his reports of fraud allegations fell "well within the scope" of his employment (RSF 42) precludes him from showing any clearly established law that put Drs. Vintch and

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1   Putnam on notice that Plaintiff was actually speaking as a private citizen. *See*

2   *Ohlson*, 9 F.4th at 1164-67 (defendants entitled to qualified immunity absent clearly

3   established law showing plaintiff spoke as a private citizen rather than as a public

4   employee when testifying in court); *Demers v. Austin*, 746 F.3d 402, 417 (9th Cir.

5   2014) (same result in context of professor's academic speech). *Plaintiff ignores this*

6   *point and should be deemed to have conceded qualified immunity is warranted on*

7   *this basis*.

8       Defendants also demonstrated the lack of clearly established law suggesting

9   Plaintiff's report to the NIH addressed a matter of public concern. *See Freitag v.*

10  *Ayers*, 468 F.3d 528, 544-45 (9th Cir. 2006) (prison guard's speech was protected as

11  to some issues but not others), *cert. denied*, 549 U.S. 1323 (2007). Plaintiff's only

12  basis for arguing otherwise is a case where the plaintiff's speech alleged that

13  government employees "wasted resources, acted unethically, mismanaged

14  personnel, and violated safety regulations, thereby putting patients in jeopardy."

15  *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1406 (9th Cir. 1988) (overruled as to job-

16  related speech by *Garcetti*, 547 U.S. at 421-22). By comparison, Plaintiff's NIH

17  report asserted that Dr. White and others misrepresented procedural volume

18  histories in connection with the BEST-CLI Trial, but this did not rise to the level of

19  research misconduct or permanently cease Harbor-UCLA's participation in the trial.

20  (RSF 43-45.) Even if this Court were to agree that Plaintiff's NIH report addressed a

21  matter of public concern, *Roth* is insufficiently similar to make this a matter of

22  clearly established law, so qualified immunity is proper on this additional basis.

23      Moreover, Plaintiff entirely fails to address Defendants' showing that there is

24  no clearly established law under which the gap in time between Plaintiff's speech

25  and any allegedly adverse action was sufficient to raise an inference of retaliation.

26  *See Perez v. City of Roseville*, 926 F.3d 511, 524 (9th Cir. 2019) (qualified

27  immunity appropriate absent clearly established law on whether there was a

28  sufficient temporal nexus between allegedly stigmatizing charges and plaintiff's

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

termination to establish due process deprivation under § 1983); *Cornwell*, 439 F.3d at 1035; *Knickerbocker*, 81 F.3d at 912. Plaintiff has never explained how any reasonable person in the position of Drs. Vintch or Putnam could have known it would be unlawful to propose a Behavioral Agreement, and alternatively recommend revocation of Plaintiff's clinical privileges, in light of this timing— especially given the FPPE report's findings (RSF 14-24, 34), and the undisputed privileged status of the MEC proceedings under California state law. *See Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1016 (2021); Cal. Civ. Code § 47(b). Plaintiff should be deemed to have conceded this point as well. These undisputed circumstances further compel qualified immunity.

### C.   No Clearly Established Law Favors Plaintiff on *Pickering* Balancing.

Plaintiff ignores the Ninth Circuit authority cited by Defendants which requires him to establish this case is "one of those rarities" where *Pickering* balancing favors a public employee's free speech interests under clearly established law in order to defeat qualified immunity. *Dible v. City of Chandler*, 515 F.3d 918, 930 (9th Cir. 2008) ("because whether a public employee's speech is constitutionally protected turns on a context-intensive, case-by-case balancing analysis, the law regarding such claims will rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity"); *Brewster v. Board of Educ.*, 149 F.3d 971, 981 (9th Cir. 1998) (reversing denial of qualified immunity where "both parties can point to important interests supporting their respective sides of the *Pickering* balance"). *Plaintiff should be deemed to have conceded that this balancing test does not favor him under clearly established law, which further compels qualified immunity*.

Moreover, it would be facetious at best to suggest clearly established law demonstrates that Plaintiff's free speech interests conclusively outweigh the MEC's interests in promoting the efficiency and effectiveness of the provision of healthcare

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

services to Harbor-UCLA patients, as well as a non-hostile work environment. (RSF 24, 34, 36, 162, 165; *see* pp. 23-25, *supra*.) As a quasi-judicial body, the MEC was entitled under clearly established state law to direct an FPPE committee to engage in fact finding, evaluate the results, vote on proposed remedial action, and seek to administratively regulate the conduct of a disruptive physician. *See* Cal. Civ. Code § 47(a), (b). Because the MEC's adequate justifications are not outweighed by Plaintiff's free speech interests under clearly established law, Drs. Vintch and Putnam are entitled to qualified immunity.

## IV.    Plaintiff Cannot Recover Punitive Damages From Dr. Putnam.

Plaintiff argues he can recover punitive damages from Dr. Putnam because he claims he can prove retaliation. (Doc. 62 at 29.) His argument is a tacit concession that if he cannot prove retaliation (which the foregoing discussion confirms), he cannot recover punitive damages from Dr. Putnam.

Furthermore, Plaintiff is wrong to suggest punitive damages are automatic whenever First Amendment retaliation is found. The district court case he quotes for the "by definition" proposition was decided under Title VII, which has its own punitive damages provision that is "*easier to satisfy*" than the one applicable to § 1983. *Stender v. Lucky Stores, Inc.*, 803 F. Supp. 259, 324 (N.D. Cal. 1992) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983), but erroneously describing it as a case under § 1981) (italics added). The other Title VII cases cited by Plaintiff are inapposite for this same reason. (*See* Doc. 62 at 29.)

Plaintiff does cite *Smith*, under which he must prove Dr. Putnam was "motivated by evil motive or intent," or demonstrated "reckless or callous indifference" to federally protected rights, in order to recover punitive damages under § 1983. *Smith*, 461 U.S. at 56. The phrase "reckless or callous indifference" is "synonymous" with "deliberate indifference," which the Ninth Circuit defines as "the conscious choice to disregard the consequences of one's acts or omissions," and tantamount to "criminal recklessness." *Castro v. County of L.A.*, 797 F.3d 654,

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1  669-70 (9th Cir. 2015) (cleaned up).

2       Defendants' motion and the foregoing discussion demonstrate the total

3  absence of evidence that Dr. Putnam harbored "evil motive or intent," or

4  consciously chose to disregard Plaintiff's First Amendment rights. This Court

5  should summarily dismiss Plaintiff's punitive damages claim against Dr. Putnam.

6  **V.**    **Conclusion**

7       Drs. Vintch and Putnam again respectfully ask this Court to grant their

8  Motion for Summary Judgment, or alternatively Partial Summary Judgment.

9  DATED:  November 22, 2021         BALLARD ROSENBERG

10                                        GOLPER & SAVITT, LLP

11

12                             By:

13                                  Linda Miller Savitt

                                 John J. Manier

14                                  Linda B. Hurevitz

                         Attorneys for Defendants BRANT PUTNAM,

15                          M.D., JANINE VINTCH, M.D., ANISH

                         MAHAJAN, M.D., CHRISTIAN DE

16                          VIRGILIO, M.D., HAL F. YEE, M.D., ROGER

                         LEWIS, M.D., and MITCHELL KATZ, M.D.

17

18

19

20

21

22

23

24

25

26

27

28

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 15760 Ventura Boulevard, Eighteenth Floor, Encino, CA 91436.

On November 22, 2021, I served true copies of the following document(s) described as **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS BRANT PUTNAM, M.D. AND JANINE VINTCH, M.D. FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

☐   **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List.  I am "readily familiar" with Ballard Rosenberg Golper & Savitt, LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business.  Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Encino, California, on that same day following ordinary business practices.

☐   **BY FEDEX:**  I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List.  I deposited such document(s) in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver authorized by FedEx to receive documents, in an envelope or package designated by FedEx with delivery fees paid or provided for, addressed to the person(s) being served.

☒   **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  By electronic mail transmission, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es).  The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 22, 2021, at Encino, California.

_____
Darla Salter

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

# SERVICE LIST

Mark T. Quigley, Esq.
Aaron L. Osten, Esq.
Greene Broillet & Wheeler, LLP
222 No. Pacific Coast Highway,  Suite 2100
P.O. Box 955
El Segundo, CA 90245
Telephone: (310) 576-1200
Email: mquigley@gbw.law
         aosten@gbw.law

Courtesy cc:
VWinn@gbw.law

***Attorneys for Plaintiff and Appellant Timothy Ryan, M.D.***

Stuart Esner, Esq.
Law Offices of Esner, Chang & Boyer
234 E. Colorado Boulevard, Suite 975
Pasadena, CA 91101-2262
Tel.:  (626) 535-9860
sesner@ecbappeal.com

***Attorneys for Plaintiff***

Jeffrey M. Hausman, Esq.
Law Offices of Hausman & Sosa LLP
20750 Ventura Blvd., Suite 105
Woodland Hills, CA 91364
Tel: (818) 654-9000
Fax: (818) 654-9050

e-mail:  JHausman@hausmansosa.com

***Attorneys for Defendant County of Los Angeles***

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436